928

# Richmond

## G. H. PEARCEY V. SAINT PAUL FIRE AND MARINE INSURANCE COMPANY.

January 17, 1935.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Chinn, JJ.

The opinion states the case.

*B. A. Davis, Jr.,* and *J. B. Allman,* for the plaintiff in error.

*Woods, Chitwood, Coxe & Rogers,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This action was brought by plaintiff in error on a fire insurance policy to recover for the loss of certain store fixtures and equipment. There was a verdict in favor of the plaintiff below, which was set aside by the trial court on the ground that the same was without sufficient evidence to support it, and final judgment entered for the defendant.

The fixtures covered by the policy were owned by the plaintiff individually, but were used in a small store operated by Pearcey and Huffman, which was located in a suburban community known as Garden City, three or four miles from the city of Roanoke. The building was of frame construction, one story high. The walls were covered on the outside with pine weatherboarding, and on the interior with paper wall board.

About one o'clock on the morning of June 6, 1932, a terrific explosion took place in this store, as a result of which the building was utterly demolished. Large blocks of the concrete foundation were blown a considerable distance, and the timbers and other materials of which the building was constructed, were scattered over a considerable area. The force of the explosion was so great that it broke window panes in a near-by building, and one of the witnesses who was about a quarter of a mile off, testified, "It seemed like the whole mountain was coming down." Those who first reached the scene after the explosion took place found the debris within the foundation walls burning, and several isolated small fires burning in the scattered wreckage.

An examination the next morning showed that less than twenty per centum of the wreckage that fell outside of the foundation walls had been on fire.

It is conceded by plaintiff in error that under the terms of the policy he is not entitled to recover unless it is shown that the fire and not the explosion was the proximate cause of the loss. In other words, if the explosion was caused by a pre-existing fire, then the fire was the proximate cause and not the explosion, but if the fire was produced by the explosion, then the explosion was the proximate cause and the insurance company is not liable.

■ The rule, when an insurance policy exempts the insurer from liability for loss occurring by explosion, is stated in 26 C. J., section 439, on page 344, as follows:

"The usual exception of loss by explosion of any kind exempts the insurer from liability for loss caused, either directly or indirectly, by an explosion, including an explosion of gas, caused by a match or light; and this rule applies even though, under the terms of the policy, the insured is authorized to keep explosives on the premises. Where, however, the explosion is caused by a preceding hostile fire during its progress in the insured premises, the insurer is liable both for the loss caused by the fire and also that caused by the explosion, since fire is the proximate cause of the whole loss and the explosion is a mere incident."

It is also conceded that the burden is on the plaintiff in the instant case to establish the defendant's liability by proof that the loss was caused by a fire which preceded the explosion, to the exclusion of the fact that the loss was caused by the explosion. As stated by counsel for the plaintiff in their petition: "As we understand the law applicable to this case, it is incumbent on the plaintiff to show a hostile fire which in its natural course would have destroyed the insured property."

■ In *Norfolk & W. R. Co.* v. *Poole,* 100 Va. 148, 40 S. E. 627, 629, it is said: "Where damages are claimed for injuries which may have resulted from one of two causes, for one of which the defendant is responsible and for the

other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause. And he must also fail if it is just as probable that the damages were caused by the one as by the other, since the plaintiff is bound to make out his case by the preponderance of the evidence. *Searles* v. *Manhattan Ry. Co.,* 101 N. Y. 661, 5 N. E. 66; 1 Shear. & Red. on Neg. section 57; *C. & O. Ry. Co.* v. *Sparrow,* 98 Va. at pages 640, 641, 37 S. E. 302, 305, 306."

The sole question presented by the record is, therefore, whether the trial court should have set aside the verdict of the jury on the ground that the evidence was insufficient to show that a fire preceded the explosion and was the proximate cause of the loss. To sustain the burden of proof resting upon him, plaintiff below relies upon the evidence of three boys about nineteen years of age: E. D. Tasker, A. T. Kelly, and King L. Gearhart. The testimony of these witnesses is practically identical. In substance they testified that they were "driving around" in an automobile in the vicinity of the store about one o'clock on the morning the disaster occurred, and had stopped on one of the roads in Garden City about one-quarter of a mile from the store to fix a flat tire. They say that one of the boys was pumping up the tire and the others were standing by the car when they heard a sizzling noise and saw a blue flame, in the direction of the store, shoot up into the air about a hundred feet; that the light illuminated the entire section, but lasted only a second or two and subsided almost immediately; that from a minute to a minute and a half after they saw the light they heard the sound of the explosion.

Tasker's evidence is this: "Well, we were fixing this tire and we heard a sizzling, and then we looked up that way and there was a blue blaze going up in the air and that died down. We didn't pay much attention to it at first, we kept on fixing the tire and in about a minute or two we heard this explosion go off and we looked up and everything was on fire and we ran up there.

"Q. Did that blue blaze come from the same place the explosion did?

"A. Yes, sir.

"Q. What did you do when you got over there?

"A. Everything was on fire it seemed like to me. The building was all tore up."

Kelly said:

"We heard a little keen sizzling like, and later seen that blue flame go up.

"Q. Go up from where?

"A. From Mr. Pearcey's store, it went up a little ways, but we didn't pay much attention to it, and we went on fixing the flat tire.

"Q. Then what happened?

"A. Then we went on fixing the flat tire and I don't reckon it was more than a minute or a minute and a half, then we heard something, whatever it was, blow up. There was a big noise and then we seen the fire.

"Q. Did you see any fire around the foundation?

"A. Yes, sir, there was fire everywhere.

"Q. Did you see any timbers burning out away from the building?

"A. Yes, sir, where it blowed out."

Gearhart said:

"A blue streak of fire went in the air whirling like this (indicating), a keen whistling noise like or sizzling.

"Q. Was that sizzling noise made by the fire?

"A. Yes, sir.

    *     *     *     *     *     *     *     *

"Q. Was there anything left on the foundation, any part of the building?

"A. Yes, sir.

"Q. Was that on fire?

"A. Yes, sir, I don't know whether it was standing on the foundation, it was laying around inside the foundation burning."

That "a part of the floor and the supports under the floor" inside the foundation were still there and on fire, and

that "the debris that was blown away" from the foundation was on fire also.

On cross-examination the above witnesses were asked to indicate by raps on the table their respective estimates of the period of time that elapsed between their seeing the flash of light and their hearing the sound of the explosion. A stop-watch test shows Tasker's estimate to be seventy-one and three-fifths seconds, Kelly's seventeen and two-fifths seconds, and Gearhart's sixty-one and three-fifths seconds.

The testimony of the plaintiff was that he was asleep at his home about one-half mile from the store when the explosion awakened him; that he got up pretty quick, but did not get away for ten or fifteen minutes; that when he reached the scene "everything was burning around"; that the fixtures were all there and were burning inside the foundation; and that "the meat block and everything was burned up."

Plaintiff further testified that there was no gasoline, dynamite, gunpowder, or other explosive on the premises; that he had about forty gallons of kerosene in a steel tank, but upon examination of the tank after the fire he found it had not burst. He said there might have been a few shot-gun shells in the store, and there was an electric refrigerator, but it seems to be conceded that the shells, if there, could not have caused the damage, and it was shown that the refrigerant used in the refrigerator was non-inflammable. Plaintiff knew of nothing else in the store that could have exploded, nor knew of anything that could have caused a fire, and could assign no cause for the explosion.

It was testified on behalf of the defendant by Doctor and Mrs. Chas. A. Conduff, the latter a registered nurse, that they were returning from a professional call on a side road that led them towards the store in question, and that they had an unobstructed view of the store for about one hundred yards before turning off on the main road to Roanoke; that when they made this turn, which was only

about two hundred yards from the store, their backs were to the store and they had gone only about fifty yards from the intersection when they saw a bluish-green light which lit up the heavens momentarily, and almost simultaneously heard the noise of a loud explosion. They further state that prior to the explosion they had seen no evidence of fire in the vicinity of the store.

It was testified by J. Barab, a witness for the defendant, that he was explosive engineer and chemist for the United States Bureau of Mines for two years, and since 1917 had been in the employ of the Hercules Powder Company, a large manufacturer of explosives, as director of research and development work in explosives for that company. This witness testified in substance that wood would ignite at a temperature of 500 degrees or 600 degrees Fahrenheit, but that the heat generated in an explosion would be in excess of 2,000 degrees and probably 4,000 degrees or 5,000 degrees; that an explosion such as that which wrecked the building in question would have been very apt to set it on fire; that even though there had been no fire preceding such an explosion, whatever caused the explosion, if it was of explosive material, would quite readily ignite the inflammable matter surrounding it; and from the fact that the debris of the building was found burned afterwards, no conclusion could be drawn either that a fire preceded the explosion or that the explosion preceded the fire; that there was no necessary connection between the two, and from the facts it may have occurred either way; that burning wood produces flame of a yellowish color, and green and blue flames are produced by certain liquids and gases.

Looking at the evidence of the witnesses relied on by the plaintiff in connection with such of the testimony of the other witnesses above referred to as is not in conflict with that of the plaintiff, we feel forced to conclude that the trial court was right in setting aside the verdict as it did. The only fact established by the testimony of the boys is that they saw a blue flame shoot suddenly into the air and immediately subside, which, in a minute or a min-

ute and a half, they say, was followed by the explosion which demolished the building. The court will take judicial cognizance of the fact that light travels 184,427 miles per second, while sound waves travel only 1,090 feet, or about one-fifth of a mile per second. Light waves, therefore, travel approximately a million times faster than sound waves. Considering the fact that there must have been an interval between the time the boys, who were one quarter of a mile off, saw the blue light flare up into the sky and the moment they heard the sound of the explosion, even though the light and explosion were simultaneous, the time the boys give is necessarily only a guess or rough estimate on their part of the interval which elapsed. They themselves say they were busy fixing the tire and "didn't pay much attention" to the light. That their estimate was relative merely and cannot be accepted as accurate, is also shown by the variation on the subject in their testimony. Coupling the above facts with the testimony of Doctor and Mrs. Conduff, who were within two or three hundred yards of the store and say the flash and the explosion were practically simultaneous, we do not think the testimony of the boys as to the interval of time, and the fire they found burning in the wreckage after the explosion, is sufficient to show that the explosion was caused by a pre-existing fire in the building, as the plaintiff contends. On the contrary, according to their own testimony, the flame which the boys saw shoot into the air was blue in color, whereas the undisputed evidence is that burning wood produces a yellow flame. It also appears from the testimony of the boys that the light was only momentary, or at the most, lasted only one or two seconds, whereas if the building itself had been on fire before the explosion, the light emitted and seen by the boys would have been a comparatively low and steady flame, and have lasted to the moment of the explosion. These facts, we think, conclusively show that the flash of light seen by the boys could not have been a fire consuming the store, but must have been caused by the setting off, in

some way, of some highly explosive material in or near the store.

As previously stated, what caused the explosion nobody seems to know; nor did anyone undertake to account for the "sizzling noise" the boys claim to have heard. So far as the evidence goes, all that seems to be known is that there was a flash of blue light which momentarily lit up the heavens, a heavy explosion which destroyed the store, and a fire afterwards which partly consumed the debris. Since, however, there was an explosion, but according to his evidence, nothing in the store to explode, plaintiff advances the theory that enemies of his might have first placed the explosives in the building, and then set it on fire for the purpose of causing the fire. This is, so far as the evidence is concerned, pure conjecture.

"While a party demurring thereto is considered as admitting the truth of his adversary's evidence, and all just inferences which can be properly drawn therefrom by a jury, he does not admit any fact not proven by the evidence, nor does he admit any forced or illogical deductions from the testimony." *Hicks* v. *Romaine,* 116 Va. 401, 82 S. E. 71, 74.

And the rule of law is well settled that, "if it appears that the facts and circumstances from which a conclusion is sought to be deduced, although consistent with that theory, are equally consistent with some other theory, they do not support the theory contended for." *Hicks* v. *Romaine, supra.*

Upon consideration of the whole case, after carefully reading the evidence, we are of the opinion that the plaintiff below failed to show that the explosion which wrecked the building was caused by a pre-existing fire to the exclusion of the equally plausible theory which may be deduced from the evidence that the fire was caused by the explosion.

The judgment of the lower court will, therefore, be affirmed.

*Affirmed.*