# Richmond

## Eva Harris Hopson v. Hungerford Coal Company, Incorporated.

March 1, 1948.

Record No. 3323.

Present, Gregory, Eggleston, Spratley, Buchanan and Staples, JJ.

300

The opinion states the case.

*Walter M. Evans*, for the appellant.

*John G. May, Jr.*, and *Robert Lewis Young*, for the appellees.

GREGORY, J., delivered the opinion of the court.

The petitioner applied to the Industrial Commission of Virginia for compensation for the death of her husband, William L. Hopson, who was an employee of Hungerford Coal Co., Inc., dealers in coal. She and her six children under the age of eighteen years at the time of his death were his dependents.

The Industrial Commission denied compensation on the ground that there was no evidence that the accident causing Hopson's death arose out of his employment.

There is no dispute as to the facts. They are as follows: Hopson had been a faithful employee of the Hungerford Coal Co., Inc., for 24 years and he had no known enemies. He was at the time of his death and had been for several years a truck driver engaged in delivering coal to the customers of his employer. In addition to this, he also worked on a farm in New Kent county which belonged to his employer and which was operated as a part of the business of the coal company and used for the entertainment of the customers of the company. It had proven successful for a number of years in aiding in the retention of old customers and attracting new ones. It was not self-supporting and the expense of maintaining and operating it, including Hopson's salary, was borne by the coal company.

On the morning of October 16, 1946, Hopson was instructed to deliver a load of coal to a customer in Richmond and after the delivery to proceed with the coal truck to the farm where he was directed to cut some standing corn to be used in feeding the livestock. He was directed to return to Richmond that afternoon. The truck was a red, dump body truck, with the name, "Hungerford" in large letters on each side of the body, and the words "Hungerford Coal Co., Inc." on the rear.

Hopson delivered the load of coal as directed and proceeded to the farm but failed to return to Richmond in the afternoon. He was never seen alive after the morning of October 16. Mr. Hungerford, suspecting foul play, report-

ed to the police the absence of Hopson. On October 22 he went to the farm himself where he found the body of Hopson considerably decomposed. It was lying in a corn field, partly covered with corn stalks, and some 78 feet from the road leading to the farm house. Hopson had been shot several times in the head with a 20-gauge shotgun at close range. Several pieces of shotgun wadding from the shells were found within a few feet of his body. The truck had been moved. Hopson had evidently commenced the performance of his assigned duties when he was killed, because some of the corn had actually been cut. He had no money on his person but he did have a silver watch and chain and a card case containing his chauffeur's license. It was generally known that he did not carry substantial funds or valuables on his person. So far as is known, no one other than the assailant and Hopson was on the farm at the time of the murder.

It is stipulated that Hopson was killed with a shotgun on October 16, 1946, during his regular working hours, by one Thomas Edward Barker, who had been committed to the Central State Hospital for the Negro insane at Petersburg on August 26, 1946, but had escaped from that institution on October 13, 1946.

Barker was not available as a witness for the reason that he was insane. Dr. Allison of the Central State Hospital was of the opinion that he was feeble minded at the time he was committed in August, 1946, and that he possessed the mentality of a 13-year-old boy. He was familiar with the location of the Hungerford farm and of that general section of New Kent county, having been born and reared in that neighborhood. He and Hopson were not acquainted.

On October 15, Barker appeared at the home of his brother-in-law, Clifford Otey, who lived near the Hungerford farm. He spent the night at Otey's home and left the next morning at 7:30, after having stolen Otey's 20-gauge shotgun, with which the murder was committed, and a box and a half of shotgun shells. Prior to the murder on October 16, Barker attempted to obtain money from persons in and

around Black's store at Quinton, a mile from the Hungerford farm. He was seen by several persons on that morning, evidently after the murder, driving the Hungerford truck rapidly away from the farm. One James Ghee, between 12 noon and 2 p. m. on October 16, while walking along the highway, met Barker driving the truck about 2½ miles from the Hopewell ferry. Barker offered to sell Ghee the shotgun and Ghee finally bought it for $2. A little later Barker was seen at the Hopewell ferry and still later voluntarily returned to the hospital at Petersburg around six o'clock in the evening. Before boarding the ferry he had abandoned the truck. It is estimated that the murder was committed probably between 11 a. m. and 12 noon on October 16.

Barker again escaped from the hospital on the night of October 22 and returned to this same neighborhood. A posse was formed on the night of October 24 and he was captured about 10 p. m. that night. A button was missing from his coat and a button which was found at the scene of the crime was identified as corresponding to the buttons on the coat.

The missing truck was located on October 27 secreted in some woods near the Hopewell ferry. The record fails to show that Barker made any effort to dispose of the truck. He was indicted for murder on November 4, 1946, but he has not been tried on account of his mental condition. He was found insane by the authorities at the State Hospital on March 26, 1947.

The Industrial Commission held that from the established facts there could be no doubt but that Hopson was killed as the result of an accident happening in the course of his employment. When he was shot he was doing that which he was employed to do and doing it under instructions from his superior.

The serious and determinative question is, did the accident arise out of Hopson's employment. This question was answered in the negative by the Industrial Commission.

Under section 2-D of the Workmen's Compensation Act, which is carried in the Code of Virginia, 1942 (Michie) as

section 1887(2)(d), "Injury and personal injury mean only injury by accident * * * arising out of and in the course of the employment * * *." Other States have been more liberal in extending the meaning of "arising out of and in the course of the employment" than Virginia.

Perhaps the clearest definition of "arising out of and in the course of" is found in *In re McNicol*, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306. We have approved this case many times.

In several States there is a presumption, in the absence of evidence to the contrary, that where an employee charged with the performance of a duty is found injured at a place where his duty required him to be, he was injured in the course of and in consequence of the employment. *Saunders* v. *New England Collapsible Tube Co.*, 95 Conn. 40, 110 A. 538, and *Wishcaless* v. *Hammond, Standish & Co.*, 201 Mich. 192, 166 N. W. 993.

In *Hanson* v. *Robitshek-Schneider Co.*, 209 Minn. 596, 297 N. W. 19, it was held that "arising out of and in the course of" does not require that the latter be the proximate cause of the injury. The court observed that if the legislature had meant that it would have said so. Other cases placing more liberal construction upon the quoted language in other jurisdictions are *Louie* v. *Bamboo Gardens* (1947) (Idaho), 185 P. (2d) 712; *Hartford Acci., etc., Co.* v. *Hoage*, 66 App. D. C. 160, 85 F. (2d) 417, and *Whaley* v. *Patent Button Co.* (Tenn.), 202 S. W. (2d) 649.

In *Sullivan* v. *Suffolk Peanut Co.*, 171 Va. 439, 199 S. E. 504, 120 A. L. R. 677, Sullivan, a night watchman, was found dead as a result of an accident. He had been killed on the railroad tracks near the premises he was employed to watch. The point where he was killed afforded a better view of the premises. He was not on a private mission of his own. Under these circumstances this court held that *in the absence of any evidence to the contrary* a presumption would be applied that Sullivan was engaged in his master's business at the time and that his death arose out of and in the course of his employment.

In the instant case there was some evidence to the contrary. Inferences might have been drawn from the circumstances that would have tended to support the conclusion that there was no causal connection between the murder and the employment. The commission found that there was no evidence of a motive or causal connection and that there was no evidence that the shooting was directed against the employee because of the employment. These considerations differentiate the case at bar from the *Sullivan Case*.

In cases of this nature, where liability is imposed on the employer on presumptive evidence to the effect that the death arose out of the employment, there must be an absence of contrary or conflicting evidence on the point and the circumstances which form the basis of the presumption must be of sufficient strength from which the only rational inference to be drawn is that death arose out of and in the course of the employment.

The New Jersey court has differentiated the cases in which the presumption may or may not be applied. See *Nardone* v. *Public Service Elec., etc., Co.*, 113 N. J. L. 540, 174 A. 745, and *Giles* v. *W. E. Beverage Corp.*, 133 N. J. L. 137, 43 A. (2d) 286. The courts of Maine have held to the same effect. See *Hawkins* v. *Portland Gas Light Co.*, 141 Me. 288, 43 A. (2d) 718.

Virginia is committed to a more conservative interpretation of the phrase "arising out of and in the course of". In *Campbell & Co.* v. *Messenger*, 171 Va. 374, 199 S. E. 511, a case very similar to the one at bar, this court, speaking through Justice Holt, said: "Courts are liberal in construing the word 'accident'. That which will sustain a recovery is an injury which can be traced to the employment as a cause. Even murder may be an accident. *Farmers' Mfg. Co.* v. *Warfel*, 144 Va. 98, 131 S. E. 240. The assault may be by a fellow-servant or by a stranger. *Continental Life Ins. Co.* v. *Gough*, 161 Va. 755, 172 S. E. 264. It was there said (p. 266): 'The same authorities hold that if the assault was personal to the employee and was not directed against him as an employee, or because of his employment,

then the injury is not compensable. In other words, simply because the employee sustains injury from an assault made upon him by a third party does not entitle him to compensation; he must go further and prove that the assault was directed against him as an employee, or because of his employment; that is, that it arose out of as well as in the course of his employment.' "

■ And again the court, at page 379, said: " 'When damages are claimed for injuries which may have resulted from one of two causes, for one of which the defendant is responsible, and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause. And he must also fail if it is just as probable that the damages were caused by the one as by the other, since the plaintiff is bound to make out his case by the preponderance of evidence.' *Norfolk, etc., R. Co.* v. *Poole,* 100 Va. 148, 40 S. E. 627; *Pearcey* v. *St. Paul Fire, etc., Ins. Co.,* 163 Va. 928, 177 S. E. 843. This principle is as applicable to Workmen's Compensation cases as it is to other cases. *Hahn* v. *Industrial Comm.,* 337 Ill. 59, 168 N. E. 652."

■ Again at page 380 the court said: "It comes back to this: The plaintiff must prove his case, and as an essential part of it, he must prove causal connection between the employment and the shooting. This proof must go beyond conjecture."

That case is controlling here, and compels an affirmance of the order of the commission. See also, *Lawrence* v. *Viscose Corp.,* 6 O. I. C. 963; *Pulley* v. *American Suppliers, Inc.,* 15 O. I. C. 163, and *Maupin* v. *Roanoke Water Works Co.,* 15 O. I. C. 438.

It is true a permissible and reasonable inference could have been drawn by the Industrial Commission that Hopson was killed by Barker in an effort on Barker's part to steal the truck. He did steal the truck and drove it many miles away and secreted it in the woods. Even if his mentality was that of a child 13 years of age he was cunning enough to hide the truck. Probably he was intelligent

enough to have painted over the lettering on the truck. The police, in making their report which was a very thorough one, stated that the motive of Barker in killing Hopson probably was the theft of the truck and that Barker was capable of distinguishing between right and wrong. Concealing the body of Hopson under the corn stalks, his flight from the scene of the crime, the sale of the shotgun he had stolen, hiding the truck, making his getaway on the Hopewell ferry, and his return to the institution at Petersburg could have been found by the commission as circumstances sufficient to establish motive. His second escape might have been to return to the truck, remove the identification lettering thereon by applying paint and then offer it for sale.

A finding by the commission that Hopson's death arose out of his employment could have been predicated on the circumstances narrated. But under its power to make conclusive findings of fact it has found that the circumstances and the inferences do not support the claim that the theft of the truck was the motive of Barker in killing Hopson. The commission refers to other circumstances and inferences which it holds lead to the conclusion that theft was not the motive. The circumstances pointed out are that Hopson was shot close to where his body was found in the corn field. No evidence shows where the truck was parked at the time. It is not likely it was parked in the corn field. Barker might have taken the truck without Hopson's knowledge or before he could have reached Barker. If Hopson attempted to prevent the theft likely he would have left the corn field to do so. Probably the truck was taken by Barker in his effort to escape rather than for the purpose of stealing it.

Motive was the vital element in the case for if it were a personal matter between Hopson and Barker then his death would not have grown out of his employment. On the other hand if the death occurred while he was attempting to protect his employer's property from theft his death might have been said to have arisen out of his employment. The commission has held that there is no

sufficient proof of the motive and that to conclude that the death of Hopson arose out of his employment would be conjectural. This, in effect, is a finding of fact by the commission and is binding upon this court. See Code, sec. 1887(61).

In concluding, the commission held: "Thus there is here presented a case in which by possibility liability might follow from causes for which the employer is responsible. Other equally plausible causes have been suggested from which no liability can be established. An award of compensation therefore would be based upon mere conjecture or upon the hope of making the right guess. This cannot be done."

■ Before compensation can be awarded it must be concluded from the facts that the injury or death has been traced to the employment as a cause. Where divergent or conflicting inferences reasonably might be drawn from established facts their determination is exclusively for the fact-finding body.

The order of the Industrial Commission is affirmed.

*Affirmed.*