Richmond

## BAGGETT TRANSPORTATION COMPANY OF BIRMINGHAM, ALABAMA

v.

## DIXIE E. DILLON, et al.

November 22, 1978.

Record No. 780455.

Present: All the Justices.

## DICK MEADOR TRUCKING COMPANY, INC.

v.

## DIXIE E. DILLON, et al.

November 22, 1978.

Record No. 780436.

Present: All the Justices.

*Anthony F. Troy (Andrew P. Miller; Stephen W. Brewer; Mays, Valentine, Davenport & Moore,* on briefs), for appellant.

*Kendall O. Clay* for appellees. [Record No. 780455].

*Jerry K. Jebo; Stephen D. Rosenthal (Jebo and Rosenthal,* on briefs), for appellant.

*Kendall O. Clay* for appellees. [Record No. 780436].

COMPTON, J., delivered the opinion of the Court.

The dispositive question in this appeal of a workmen's compensation case is whether the employee's death arose out of his employment.

Appellee Dixie E. Dillon applied to the Industrial Commission for benefits for herself and two minor children, following the death of her husband, Bobby Millard Dillon, on February 19, 1977 in Rockbridge County. Named as Dillon's employers were appellants Baggett Transportation Company of Birmingham, Alabama and Dick Meador Trucking Company, Inc. Following an August 1977 hearing, a deputy commissioner entered an award of compensation against Meador only. After taking additional evidence, the full Commission sustained the award but held both Meador and Baggett liable to the claimants. We granted the defendants separate appeals from the March 1978 final award.

The facts are uncontradicted. Baggett is an interstate general commodity carrier. Meador is an independent carrier which leases trucks with drivers to other carriers. On the day of his death, a Saturday, Dillon had been operating a Meador tractor-trailer unit leased to Baggett and he was engaged in hauling a load

of explosives from Martinsburg, West Virginia, to a destination in Arkansas. As Dillon drove south through Virginia on Interstate Highway 81, his co-driver, Kenneth Farris, was asleep in the overnight compartment of the tractor. Sometime between 4:30 p.m. and 5:30 p.m., Dillon parked the vehicle headed in a southerly direction adjacent to the highway near an exit ramp leading from a temporarily closed public rest area north of Lexington. While the reason for stopping at that location is unknown, the evidence indicates that Dillon may have intended to add oil to the motor of the tractor.

Upon awakening at about 5:30 p.m., Farris discovered Dillon's body, approximately four feet from the truck, lying face up on the right side of the unit between the truck and the west ditch line. Dillon had been killed by a single .22-long caliber bullet which struck him in the chest. There were no known witnesses to the incident.

Investigation by the Virginia State Police showed there had been no attempt to hijack the truck or its cargo or to rob either Dillon or Farris. Metal seals on the rear doors of the trailer were intact after the incident. The investigation further disclosed that other shooting incidents had occurred at or near the rest area. During the weekend of Dillon's death, another .22-long caliber bullet had been fired into the rear widow of the rest area building. Impact of the bullet with the interior of the brick building prevented an accurate comparison of that bullet with the bullet which killed Dillon. On another occasion, about five years earlier, another .22-caliber bullet had been fired into a roof over a picnic table at the area, had ricocheted and had struck a traveler's foot.

At the time of the hearing, the police suspected that the assailant was a person who lived in the vicinity of the rest area and who had permission to hunt in a field near the scene, but there was insufficient evidence available to make an arrest.

Under the Workmen's Compensation Act (Act), for an injury to be compensable, the claimant must show that the injury was the result of an "accident," that it "arose out of" the employment and that it occurred "in the course of" the employment. Code § 65.1-7. The Commission found that these three elements had been established by the evidence in this case. On appeal, defendants

concede that Dillon's death was an accident and that it occurred in the course of his employment as a truck driver. They maintain, however, that the death did not "arise out of" the employment.

The claimants contend, relying as did the Commission on *Southern Motor Lines* v. *Alvis*, 200 Va. 168, 104 S.E.2d 735 (1958), that the Commission correctly determined that Dillon's death arose out of his employment. We disagree.

■ The finding that a death "arose out of" the employment, within the meaning of the Act, is a mixed conclusion of law and fact properly reviewable by this court. *Conner* v. *Bragg*, 203 Va. 204, 207, 123 S.E.2d 393, 395 (1962). Accordingly, we must determine whether the Commission's findings from the facts presented are sufficient in law to justify the award of compensation on the ground that the accident not only happened during the course of employment but also arose out of it. *Id.*, 123 S.E.2d at 395-96.

■ The following principles pertinent to the issue before us are elementary. The statutory language, "arising out of and in the course of the employment", should be liberally construed to carry out the humane and beneficial purposes of the Act. The duty to liberally construe the Act does not, however, authorize the amendment, alteration or extension of its provisions. The expressions "arising out of" and "in the course of" are not synonymous and are used conjunctively; both conditions must be present before compensation will be awarded and the burden is on the claimant to prove them by a preponderance of the evidence.

■ The words "arising out of", as used in the Act, refer to the origin or cause of the injury while the phrase "in the course of" pertains to the time, place and circumstances under which the accident occurred. An accident occurs during the course of the employment if it takes place within the period of employment, at a place where the employee may reasonably be expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto.

■ An injury arises out of the employment " 'when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting

injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart fom the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " *Bradshaw* v. *Aronovitch*, 170 Va. 329, 335, 196 S.E. 684, 686 (1938), quoting *In re McNicol*, 215 Mass. 497, 499, 102 N.E. 697, 697 (1913).

But the fact that the accident happens along a public highway, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of such causal relationship, unless the danger be one to which the employee, by reason of and in connection with his employment, is not subjected peculiarly or to an abnormal degree. *Honaker* v. *Hartley*, 140 Va. 1, 11, 124 S.E. 220, 222 (1924).

Against the background of these settled rules, we turn to the pivotal question raised by this set of facts: Does the presumption of *Southern Motor Lines* v. *Alvis, supra,* which had been earlier set forth in *Sullivan* v. *Suffolk Peanut Co.,* 171 Va. 439, 199 S.E. 504 (1938), apply?

In *Alvis,* a truck driver employed in long distance hauling by Southern Motor Lines Company of Richmond, died by accident in the course of his employment when he fell from a hotel window in Columbus, Georgia. The facts showed that the duties of this employment required him to be in that city at the time and required him to remain there over two nights. As was customary, he telephoned his employer upon his arrival at the hotel and expense money was wired to him there. He was seen by hotel employees several times during the second day of his stay and was

last seen by the night clerk on the evening of that day when he paid for his lodging. On the next day, the hotel manager entered Alvis' locked third floor room after first working out of the keyhole a key that had been inserted from inside the room. Alvis' personal belongings were in the room. A window screen had been removed and placed against the wall. The screen bore evidence of having been pried at one corner. The record disclosed that the night before had been extremely warm and that the hotel guests customarily removed the screens to admit more air. The manager replaced the screen in the window, which overlooked a narrow light well some four feet wide. More than four days later, the body of Alvis was discovered in the light well beneath the window of the room which he had occupied. The coroner reported that death was caused by a major concussion to the back of the head caused by an accidental fall from the third story window. There was evidence negating an inference that Alvis had committed suicide.

This court affirmed the Commission's award of compensation, holding that the death arose out of the employment. The court observed that the nature of Alvis' employment required him to be away from home and away from his employer's principal place of business. The court said that the safety of Alvis' cargo, himself and other travelers demanded that he be rested and alert. It was thus necessary, the court reasoned, that he have sleep and it noted that the hotel room had been provided by his employer for that purpose. The court thus stated:

> We have long since adopted the rule to the effect that where an employee is found dead as the result of an accident at his place of work or near-by, where his duties may have called him during the hours of his work, and there is no evidence offered to show what caused the death or to show that he was not engaged in his master's business at the time, the court will indulge the presumption that the relation of master and servant existed at the time of the accident and that it arose out of and in the course of his employment. [Citations omitted.]

> In this instance there was no evidence tending to show that Alvis was upon any private mission of his own, and under such circumstances and in the absence of evi-

dence to the contrary the presumption will be applied that he was engaged in his master's business and that the accident which caused his death arose out of and in the course of his employment.

200 Va. at 171-72, 104 S.E.2d at 738-39.

Here, the claimants contend the presumption applies. They argue that "Dillon's employment required him to be on the road and in caring for his master's truck was compelled to stop to put oil in the engine, and in so doing his master's business met his untimely death." As in *Alvis*, the argument continues, "there is no evidence tending to show that Dillon was on a private mission of his own. In fact, the evidence negates any assertion that at the time of his death he was not about his employer's business." We reject this contention. Such an argument overlooks the difference between the concepts of "arising out of" and "in the course of" the employment. To adopt the claimants' view under these facts and to apply the presumption would eradicate the distinction which exists under Virginia law between these expressions; it would mean an acceptance of the "positional risk" doctrine in cases of this type, *see* 1 A. Larson, *The Law of Workmen's Compensation* § 6.50, at 3-5, and amount to a rejection of the "actual risk" test long-recognized in Virginia. *See Immer and Company* v. *Brosnahan,* 207 Va. 720, 725, 152 S.E.2d 254, 257-58 (1967).

The case of *Hopson* v. *Hungerford Coal Co.,* 187 Va. 299, 46 S.E. 2d 392 (1948), relied on by defendants, is especially pertinent here. Hopson at the time of his death was a truck driver whose duties included delivering coal to Hungerford's Richmond-area customers. In addition, he also worked for his employer on a farm owned by it in New Kent County. The farm was operated by Hungerford as a part of the business of the coal company and was used for the entertainment of Hungerford's customers. The farm was not self-supporting and the expense of maintaining it was borne by the company.

During the morning of October 16, 1946, Hopson was instructed to deliver a load of coal to a Richmond customer and to then proceed with the coal truck to the farm where he was told to cut some standing corn to be used in feeding livestock. He was directed to return to Richmond the same day. The truck was

identified by appropriate markings as a Hungerford vehicle. Hopson delivered the coal and proceeded to the farm but failed to return to Richmond. He was never seen alive after that morning. Six days later his body was found at the farm lying in a corn field, partially covered with corn stalks, and 78 feet from the road leading to the farm house. He had been killed with a shotgun fired at close range. Although a silver watch and chain were found on his body, no money was discovered on his person. No one other than Hopson and the assailant was on the farm at the time of the murder.

It was stipulated that Hopson was killed on October 16 during his regular working hours by one Barker who had been committed to a Petersburg hospital for the insane in August of 1946 but who had escaped three days before the shooting. Barker did not testify at the hearing but the evidence showed he was familiar with the area in which the homicide took place. He and Hopson were not acquainted.

The evidence further showed that Barker spent the night of October 15 at a relative's home near the farm. Barker left the home early the next morning having stolen the shotgun with which the murder was committed, and some shotgun shells. Prior to the murder, he tried to obtain money from persons in a store near the Hungerford farm. He was seen after the murder driving the Hungerford truck rapidly away from the farm. He voluntarily returned to the hospital around six p.m. on the day of the crime, having abandoned the truck.

The Commission denied the claim of Hopson's widow and this court affirmed. Stating that Hopson was killed as the result of an accident happening in the course of his employment, the court addressed only the question whether the accident arose out of Hopson's employment. The court emphasized that the presumption applied only if there was an absence of evidence contrary to the conclusion that the death arose out of his employment, 187 Va. at 304, 46 S.E.2d at 394. The *Hopson* court then made the following statements which are important in the present case:

> In the instant case there was some evidence to the contrary. Inferences might have been drawn from the circumstances that would have tended to support the

conclusion that there was no causal connection between the murder and the employment. The commission found that there was no evidence of a motive or causal connection and that there was no evidence that the shooting was directed against the employee because of the employment . . . .

In cases of this nature, where liability is imposed on the employer on presumptive evidence to the effect that the death arose out of the employment, there must be an absence of contrary or conflicting evidence on the point and the circumstances which form the basis of the presumption must be of sufficient strength from which the only rational inference to be drawn is that death arose out of and in the course of the employment.

\* \* \*

[I]f the assault was personal to the employee and was not directed against him as an employee, or because of his employment, then the injury is not compensable. In other words, simply because the employee sustains injury from an assault made upon him by a third party does not entitle him to compensation; he must go further and prove that the assault was directed against him as an employee, or because of his employment; that is, that it arose out of as well as in the course of his employment.

187 Va. at 305-06, 46 S.E.2d at 394-95.

The court in *Hopson* then decided that while the facts supported a permissible inference that Hopson was killed by Barker during an effort by Barker to steal the Hungerford truck, the circumstances and inferences also pointed to the conclusion that theft of the truck was not Barker's motive in killing Hopson. The court said that "[m]otive was the vital element in the case for if it were a personal matter between Hopson and Barker then his death would not have grown out of his employment". 187 Va. at 307, 46 S.E.2d at 396. The court noted that the evidence showed that Hopson was shot close to where his body was found in the corn field; that no evidence showed where the truck was parked at the time; and that it probably was not parked in the field. The court observed that

Barker probably could have stolen the truck without Hopson's knowledge and that if Hopson attempted to prevent the theft he likely would have left the corn field to do so. The court said that probably the truck was taken by Barker in his effort to escape rather than for the purpose of stealing it. The court, refusing to apply the presumption, then agreed with the Commission's holding that there was insufficient proof of motive and that to conclude that the death arose out of the employment would be conjectural.

The same reason which prompted the court to hold that the presumption was inapplicable in *Hopson* motivates us to decide that it is inappropriate here. In the present case, there is not an absence of contrary or conflicting evidence bearing on the question of causation. Here, inferences can be logically drawn from the circumstances that tend to support the conclusion that there was no causal connection between the death and the employment. We cannot say that the circumstances which would give rise to a presumption are of sufficient strength from which the *only* rational inference to be drawn is that death arose out of Dillon's employment.

Dillon died from a gunshot wound inflicted either intentionally or negligently. There is no indication that the gun was aimed at him because of his work as a truck driver. Indeed, the evidence clearly negates any suggestion that the truck was the target of a hijacking attempt or that the assailant tried to tamper in any other way with the vehicle or its cargo. The record points to the conclusion that Dillon's death was the tragic result of an arbitrary and capricious act by an unknown assailant probably hiding near the scene. Such a result could have occurred whether Dillon was a hitchhiker, a stranded motorist or a truck driver.

The non-work-related nature of the incident is buttressed by the evidence of random shooting in the area during the same weekend of Dillon's death and at a prior time. Bullets similar to the one used in the slaying were shot into the rest area building and previously had struck a person in the picnic area. These facts are of more than coincidental significance and negate a work-related cause.

To support their position, the claimants point to the evidence that Dillon may have stopped the vehicle to add oil to the engine.

That fact is irrelevant to the issue before us; it only serves to show that Dillon was "in the course of" his employment at the time.

In short, the risk was not peculiar to the work. We cannot say that Dillon's occupation as a truck driver subjected him, to an abnormal degree, to being shot accidently or intentionally alongside a public highway. Such a danger is one to which members of the general public who are not truck drivers are likewise exposed.

*Alvis* is distinguishable on its facts. Here, there is evidence to support the conclusion of *how* and *why* Dillon died. He died from a gunshot fired by an unknown assailant who apparently was not motivated by the fact that Dillon was a truck driver. But in *Alvis*, though the evidence showed *how* he died—from a fall—it nevertheless failed to support any inference on *why* he died—whether it was related to his employment or was related to a reason having nothing to do with his occupation. Thus, in the absence of such evidence, the presumption was properly applied in *Alvis* because the evidence was silent on the question of work-related causation. Paraphrasing *Hopson*, the circumstances forming the basis of the presumption in *Alvis* were of sufficient strength from which the only rational inference to be drawn was that death arose out of the employment. There, the lack of evidence dictated employment of the presumption. But here the presence of evidence prevents use of the presumption.

Accordingly, since the legal presumption may not be employed to assist the claimants in carrying their burden to prove that Dillon's death arose out of his employment and since no other evidence supports the conclusion that the accident was work-related, the claim must fail.

Other issues were raised in these appeals, but it is unnecessary to decide them in view of the position we have taken on the foregoing question.

For these reasons, we think the Commission erred in awarding compensation benefits in this case. Consequently, we will reverse the award entered against these defendants and will enter final judgment here dismissing the claimants' application.

*Reversed and final judgments.*