JAMES R. METCALF

V.

A. M. EXPRESS MOVING SYSTEMS, INC., ET AL.

Record No. 841594

January 17, 1986

Present: All the Justices

*Barry A. Stiefel (Ashcraft & Gerel*, on brief), for appellant.
*Joseph C. Veith, III (Bromley, Brown & Walsh*, on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

In this Workers' Compensation case, the claimant, James R. Metcalf, applied for compensation from his employer, A. M. Express Moving Systems, Inc., insured by Granite State Insurance Company. A deputy commissioner ruled and, upon review, the full Commission affirmed the ruling that Metcalf had failed to prove that the injuries of which he complained, sustained when he was assaulted, arose out of his employment.

On appeal, Metcalf argues that the Commission erred in denying him the benefit of a presumption that the assault upon him arose out of his employment and in holding that the evidence established that the assault was not directed against him as an employee or because of his employment.[1] The operative facts, bizarre but undisputed, upon which his claim was based were established solely by Metcalf's testimony.

Metcalf worked as a truck driver for A. M. Express Moving Systems, Inc., operating out of Winston-Salem, North Carolina. This company was an agent for Global Van Lines, which had agents throughout the country.

On September 25, 1983, about 6:30 or 7:00 p.m., Metcalf, accompanied by Stephen Dickey as a helper and driver, left Winston-Salem in a tractor-trailer moving van with a load to be delivered in Annapolis, Maryland. The employees were ordered by their employer to proceed first to the office of the Global Van Lines agency in Alexandria, Virginia, to receive written instructions informing them where they should take the truck for another load after unloading in Annapolis.

After making two stops for coffee, Metcalf and Dickey arrived at the Global Van Lines office in Alexandria at 1:50 a.m. and

---

[1] Metcalf incorrectly states the Commission's holding. The Commission held that it could not find that the evidence established that the assault on the claimant was directed against him as an employee or because of his employment.

parked in the dead end public street outside the Global depot. They had been told to stay in Alexandria until the Global office opened. Metcalf had parked at night at this location in the past and had slept in his truck without incident. The area was well lighted and the local police impound lot was located "[r]ight down the street." Police cars pass every 15 or 20 minutes. Dickey went to sleep in the sleeping compartment in the rear of the cab; Metcalf slept in the driver's seat on a pillow laid over the steering wheel.

Metcalf was awakened by a noise. Looking out the rearview mirror on the driver's side, he saw a man walking along the side of the truck. Before Metcalf could roll down the window to inquire, the man stepped back from the tractor and fired a shot through the glass that struck Metcalf in the mouth. Metcalf, who never heard the assailant speak, did not know whether the man ever said anything. The window was closed when the man opened fire, and Metcalf was temporarily deafened by the first shot. Metcalf tried to get out of the driver's seat and into the sleeping compartment but his assailant swung the cab door open and, while standing on the ground, fired a second shot that struck Metcalf in the right hand. As Metcalf climbed into the sleeping compartment on top of Dickey, the assailant, still standing on the ground, fired a third shot that went through the seat and struck Metcalf in the chest.

The assailant came into the truck, but Metcalf struck him in the face with his briefcase and knocked him out the cab door. Metcalf scrambled to the passenger side and left the cab. He went behind the trailer, passed between the trailer and a Datsun 280Z parked immediately behind it, and headed for a wooded area nearby. He heard a fourth shot fired but this shot missed him. Metcalf fell to the ground in a field. When he got to his feet, the assailant and the Datsun 280Z were gone. There had been no cars there when Metcalf parked the truck earlier.

Metcalf crawled and walked back to the truck, where he collapsed. Dickey called for help on the C. B. radio; Metcalf was taken to a hospital, where he remained for eight days. The nature and extent of his injuries, loss of wages, and expenses are not contested.

Metcalf testified that he had $200 in his possession when the assault occurred and that at other times he had carried as much as $4,000 in cash for business purposes. The $200 was to be used

to pay itinerant laborers employed to assist in loading or unloading. Metcalf was allowed $30 a day for expenses. Metcalf said that he had never before been shot at or held up for money or valuables and had never been present when another driver was shot at or held up or had his truck burglarized. At the time of the assault upon Metcalf, the truck contained a C. B. radio, a small television set, and a tape player.

Metcalf said that neither he nor Dickey had any arguments or experienced any incidents that might have led to the attack. Metcalf testified that his employer or Global Van Lines had been engaged in witness relocation moves for the Justice Department, but he had no information that either of the moves in which he was involved on this assignment was part of such a program.

Metcalf had been convicted in North Carolina in 1969 of breaking and entering, in 1973 of uttering a forged check, and in 1973 of breaking and entering. He had been in prison between 1973 and 1978.

D. W. Scott of the Alexandria Police Department was in charge of the police investigation. He testified that he interviewed Metcalf and Dickey and arranged to have a composite picture drawn from Metcalf's description of his assailant. After this picture was circulated a truck driver communicated with Scott and identified a suspect from a display of photographs. Metcalf identified the same photograph as that of a man who resembled his assailant. The suspect, however, whom Scott interviewed in North Carolina, had an alibi which was verified by the police.

Scott had checked the police records for the two years preceding the Metcalf shooting. There had been a few larcenies and break-ins in the area but no shootings.

■ Under Code § 65.1-7 the claimant was required to prove an injury by accident arising out of and in the course of the employment. *Southern Motor Lines* v. *Alvis*, 200 Va. 168, 170, 104 S.E.2d 735, 737 (1958). Injuries may be deemed to be accidental even if incurred in a willful and intentional assault. *See A. N. Campbell & Co.* v. *Messenger*, 171 Va. 374, 377, 199 S.E. 511, 513 (1938).

■ The statutory conditions "arising out of" and "in the course of" employment are not the same; both must be established before compensation may be awarded. *See R&T Investments* v. *Johns*, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984); *Baggett & Meador Cos.* v. *Dillon*, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978).

An accident arising in the course of the employment is one which occurs "within the period of employment, at a place where the employee may reasonably be expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto." *Baggett*, 219 Va. at 637, 248 S.E.2d at 822. The record in this case shows clearly that Metcalf proved he was injured by accident in the course of his employment.

■ The record does not show, however, that Metcalf proved the accident also arose out of his employment. An accident arises out of the employment when the origin or cause of the injury relates to the employment. There must be a causal connection between the employee's injury and the conditions under which the work is required to be performed. *R&T*, 228 Va. at 252, 321 S.E.2d at 289. An injury resulting from an accident arising out of the employment

> "excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant."

*Bradshaw* v. *Aronovitch*, 170 Va. 329, 335, 196 S.E. 684, 686 (1938), quoting *In re McNicol*, 215 Mass. 497, 499, 102 N.E. 697, 697 (1913).

Metcalf argues, as he did before the Commission, that he was entitled to rely upon a presumption in lieu of evidence to meet his burden of proving that the unexplained assault upon him arose out of his employment.[2] We do not agree.

■ Metcalf seeks to apply the presumption that we have approved in certain cases that if an employee is found dead at or near his place of work from an unexplained accident the accident will be presumed to have arisen out of and in the course of the employment. *See Southern Motor Lines*, 200 Va. at 171-72, 104

---

[2] Metcalf expressly declined, both before the Commission and on appeal, to rely on the theory that his injuries resulted from an increased risk of assault peculiar to his employment. *See R&T Investments* v. *Johns*, 228 Va. 249, 321 S.E.2d 287 (1984).

S.E.2d at 738; *Sullivan* v. *Suffolk Peanut Co.*, 171 Va. 439, 444, 199 S.E. 504, 506 (1938). We do not here decide whether the presumption, heretofore applied only where death resulted from unexplained accident, shall be applied in any non-death case. The circumstances of this case do not meet the requirements for application of the presumption outlined in *Hopson* v. *Hungerford Coal Co., Inc.*, 187 Va. 299, 305-06, 46 S.E.2d 392, 394-95 (1948), and quoted with approval in *Baggett*. We said that for the presumption to be available "there must be an absence of contrary or conflicting evidence . . . and the circumstances which form the basis of the presumption must be of sufficient strength from which the only rational inference to be drawn is that death arose out of and in the course of the employment." 219 Va. at 642, 248 S.E.2d at 824. The claimant must prove that the assault was directed against him as an employee or because of his employment.

In *Hopson*, the employee, while in the course of his employment at the employer's farm, was killed by Barker, an escapee from a state hospital for the insane. Hopson's body was found six days after he was last seen; on his person he had a silver watch and chain but no money. Barker spent the night before the murder at the home of a relative located near the farm and left the next day with a stolen shotgun and shells. The morning of the murder, he tried to get money from persons at a store a mile from the farm. After the murder, he was seen driving away from the farm in the company truck Hopson had driven there that morning. Barker abandoned the truck and returned to the hospital later the same day. 187 Va. at 301-03, 46 S.E.2d at 393-94. We held that, although it was possible to infer from the evidence that Barker killed Hopson in an effort to steal the company truck, it was probable that the truck was taken merely to further Barker's escape after killing Hopson. *Id.* at 307, 46 S.E.2d at 396.

In *Baggett*, a truck driver, Dillon, was hauling a load of explosives on a Virginia interstate highway and stopped near a closed rest area, apparently to add oil to the truck's engine. He was found dead four feet from the truck, killed by a single gunshot wound to the chest. Other shootings had occurred at the rest area, one the weekend of Dillon's death and another five years earlier. The evidence showed there was no attempt to hijack the truck or cargo or to rob Dillon or his co-driver, who was asleep in the cab during the shooting. 219 Va. at 635-36, 248 S.E.2d at 821. We held the record failed to suggest a motive related to Dillon's em-

ployment; rather, it suggested that his death resulted from an arbitrary and capricious act of an unknown assailant. *Id.* at 643, 248 S.E.2d at 825.

In both of these cases, we concluded that conflicting inferences might logically be drawn from the circumstances. Because the evidence in each case supported a conclusion that there was no causal relationship between the death and the employment, the presumption was not applicable. *Baggett,* 219 Va. at 643-44, 248 S.E.2d at 825-26; *Hopson,* 187 Va. at 307-08, 46 S.E.2d at 396.

Similarly, the circumstances of the present case are not such that the only rational inference to be drawn is that the assault against Metcalf was related to his employment. Metcalf's assailant made no attempt to rob him, either before or after shooting him, or to steal the truck or any of its contents. His actions tend to negate any inference that he assaulted Metcalf with the intent to commit robbery. From the record it appears that the assailant was intent upon murdering Metcalf. He made no attempt to determine whether another driver was in the van. He apparently opened fire on Metcalf without saying a word. It could rationally be inferred that he had harbored a grievance against Metcalf from some earlier personal association and by chance or by design ascertained that he would find his prey at the time and place of the assault.

We hold, therefore, that the presumption, even if applicable in a non-death case, is not available to Metcalf. We agree with the Commission that Metcalf has failed to establish that the assault was directed against him as an employee or because of his employment. Accordingly, we will affirm the ruling of the Commission.

*Affirmed.*