FLORA GRACE HELMES

v.

PINKERTON'S, INC.

and

LIBERTY MUTUAL FIRE INSURANCE COMPANY

No. 0363-89-2

Decided October 23, 1990

198

Counsel

James G. MacQueen, for appellant.

Nathaniel S. Newman (Thompson, Smithers, Newman & Wade, on brief), for appellees.

Opinion

**BENTON, J.**—In this appeal, we are asked to decide whether the Industrial Commission erred in deciding that Flora Grace Helmes' injuries did not arise out of her employment. We conclude that Helmes was entitled to a presumption that her injuries arose out of her employment. We therefore reverse the denial of compensation and remand to the commission.

The material facts are not in dispute. Helmes was employed by Pinkerton's, Inc. as a security guard at an AT&T microwave relay station located atop a mountain in Albemarle County. Shortly after her work shift ended at 7 a.m., Helmes was found in her wrecked automobile. She was in a semi-conscious state and had sustained severe head and body injuries. As a result of the accident, Helmes suffered permanent, severe brain damage and has been unable to recall the events which preceded the accident.

The accident occurred on a road that provides the only access to the station. The two lane road, which is privately owned by AT&T, has numerous curves along its approximate three mile length from the station to the public highway. The land on both sides of the road is owned by AT&T and is wooded. The evidence established that wild animals, particularly deer, occasionally are seen on or near the road. The site of the accident is two miles from the station.

Steven Chewning, a specialist in accident reconstruction, testified at the commission hearing that the road is well maintained. Following the accident, he found scuff marks on the road that were consistent with a sharp steering maneuver to the right. He was unable to determine what had caused Helmes to make the sudden steering maneuver, and he found no indication that the automobile's brakes had been applied. Helmes' automobile was disposed of shortly after the accident occurred.

The deputy commissioner denied compensation on the ground that Helmes failed to establish that the accident occurred within the course of her employment. On review, a majority of the commission determined that Helmes' accident had occurred in the course of employment; however, the commission upheld the denial of compensation on the ground that the accident did not arise out of Helmes' employment.

Whether an injury arose out of and in the course of employment is a mixed question of law and fact, properly reviewable on appeal. *Baggett Transp. Co. v. Dillon*, 219 Va. 633, 637, 248 S.E.2d 819, 821 (1978); *Dublin Garment Co. v. Jones*, 2 Va. App. 165, 167, 342 S.E.2d 638, 638 (1986). Although, generally, an employee going to and from work is not engaged in any service growing out of or incidental to employment, *GATX Tank Erection Co. v. Gnewuch*, 221 Va. 600, 603, 272 S.E.2d 200, 203 (1980), a well established exception exists "[w]here the way used is the sole and exclusive way of ingress and egress." *Id*. at 603-04, 272 S.E.2d at 203. Where the route is the sole and exclusive means of ingress and egress, an employer is deemed to have invited the employees to use it and, thus, the employer bears the risk of injuries occurring as a result of special hazards on the roadway. *Id*. at 605, 272 S.E.2d at 204. It is undisputed that the private road connecting the station to the public thoroughfare was the only means of ingress and egress to and from Helmes' workplace. The road on which Helmes was injured, thus, meets the exception to the general rule. Accordingly, we conclude that the commission correctly found that Helmes was within the course of her employment at the time of the accident.

An injury arises out of employment "when there is apparent to the rational mind upon consideration of all the circumstances a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Dillon*, 219 Va. at 637-38, 248 S.E.2d at 822. Recently, in *County of Chesterfield v. Johnson*, 237 Va. 180, 376 S.E.2d 73 (1989), the Supreme Court reemphasized that the "arising out of" test excludes injuries resulting from hazards unrelated to the work environment. *Id*. at 183-84, 376 S.E.2d at 75. For the claim to be compensable, a "critical link [must exist] between the conditions of the workplace and the injury." *Id*. at 186, 376 S.E.2d at 76.

Helmes argues that in discharging her burden of proof she was entitled to benefit from the "unexplained-death" presumption employed by the Supreme Court in *Southern Motor Lines Co. v. Alvis*, 200 Va. 168, 104 S.E.2d 735 (1958). Alvis was a truck driver who had traveled from Virginia to Georgia, where he was required to remain for two nights. Several days after Alvis paid for his hotel room, the hotel manager entered Alvis' room and observed that the window screen had been removed and placed against a wall in the room. Alvis' body was found on the ground directly below his third floor hotel window. The report of a coroner's inquest concluded that Alvis had fallen to his death from the window of his hotel room. The Supreme Court noted that the employer "conceded . . . that Alvis met his death through accidental means." *Id.* at 170, 104 S.E.2d at 738. The Court held:

> We have long since adopted the rule to the effect that where an employee is found dead as the result of an accident at his place of work or near-by, where his duties may have called him during the hours of his work, and there was no evidence offered to show what caused the death or to show that he was not engaged in his master's business at the time, the court will indulge the presumption that the relation of master and servant existed at the time of the accident and that it arose out of and in the course of his employment. In this instance there was no evidence tending to show that Alvis was upon any private mission of his own, and under such circumstances and in the absence of evidence to the contrary the presumption will be applied that he was engaged in his master's business and that the accident which caused his death arose out of and in the course of his employment.

200 Va. at 171-72, 104 S.E.2d at 738-39 (citations omitted).

The Supreme Court revisited the *Alvis* presumption in *Dillon*. *Dillon* involved a driver who stopped to service his truck adjacent to a major highway. A co-driver, who was asleep in the truck, awoke approximately an hour later to find Dillon dead of a bullet wound to the chest. The police investigation showed that there had been no attempt to hijack the truck or to rob Dillon and that a number of similar shooting incidents recently had occurred in the area. The employer conceded that the incident occurred in the course of Dillon's employment as a driver. The Supreme Court

stated the general rule that the *Alvis* presumption could be applied only in the "absence of contrary or conflicting evidence bearing on the question of causation," 219 Va. at 643, 248 S.E.2d at 825, and further stated that the presumption was not available in "circumstances that tend to support the conclusion that there was no causal connection between the death and the employment." *Id.* The Court held that the *Alvis* presumption was not applicable in *Dillon* because the evidence supported the inference that Dillon's death was the tragic result of a random shooting by an unknown assailant, and, thus, was not work-related. *Id.* at 643-44, 248 S.E.2d at 825-26.

In *Metcalf v. A.M. Express Moving Systems, Inc.*, 230 Va. 464, 339 S.E.2d 177 (1986), the Supreme Court again had occasion to discuss the *Alvis* presumption. Metcalf had driven a loaded moving van from North Carolina to Alexandria, Virginia and arrived at 1:30 a.m. While waiting for his employer's office to open, he fell asleep in his truck and was inexplicably attacked by an unknown assailant. Metcalf sought compensation for his injuries, relying on the presumption that the unexplained assault arose out of his employment. The Supreme Court declined to decide whether the presumption, which had been applied only in unexplained death cases, should be extended to non-death cases. *Id.* at 469, 339 S.E.2d at 180. Instead, the Court concluded that evidence established "that the assailant was intent upon murdering Metcalf" and therefore the evidence supported a conclusion that there was no causal connection between the assault and the employment. *Id.* at 470, 339 S.E.2d at 181.

The rationale behind employing the presumption in unexplained death cases such as *Alvis* is that, although the reason why the death occurred is unknown, the occurrence of the death within the course of employment, coupled with the absence of other evidence, indicates at a minimum that the employment brought the employee within the range of risks inherent in the work environment.

[I]n *Alvis*, though the evidence showed how [the employee] died—from a fall—it nevertheless failed to support any inference on why [the employee] died—whether it was related to . . . employment or was related to a reason having nothing to do with [the employee's] occupation. Thus, in the ab-

sence of such evidence, the presumption was properly applied in *Alvis* because the evidence was silent on the question of work-related causation. . . . [T]he circumstances forming the basis of the presumption in *Alvis* were of sufficient strength from which the only rational inference to be drawn was that death arose out of the employment. . . . [T]he lack of evidence dictated employment of the presumption.

*Dillon*, 219 Va. at 644, 248 S.E.2d at 825-26. Thus, where the circumstances of the accident have rendered the only possible witness who could prove causation unable to testify, the premises upon which workers' compensation acts are based require that the burden be shifted to the employer to come forward with some evidence that the cause of the injury was not work related. 1A A. Larson, *Workmen's Compensation Law* § 10.32 (1990).

█ This rationale applies with equal force where the employee's ability to testify is destroyed, not by death, but by disability resulting from the accident. *See Sena v. Continental Casualty Co.*, 97 N.M. 753, 643 P.2d 622 (Ct. App. 1982). Logic dictates that the presumption, heretofore applied in unexplained death cases, should also be applied in an unexplained non-death case where the nature of the employee's injuries renders the employee neurologically disabled and unable to recall the details of the accident. In either situation, the employee is unable, by virtue of the accident, to testify as to the cause of the injuries. Helmes' inability to provide an explanation puts her in an equivalent position, for purposes of applying the presumption, to the employee whose ability to relate the events is destroyed by death.

The application of the presumption is not inconsistent with the "actual risk" doctrine followed in this state. *See Johnson*, 237 Va. at 185, 376 S.E.2d at 75-76. In *Memorial Hospital v. Hairston*, 2 Va. App. 677, 347 S.E.2d 527 (1986), this Court mentioned the "actual risk" doctrine, *id.* at 682, 347 S.E.2d at 529, but due to the circumstances of that case declined to address that question. Hairston was a hospital employee who slipped and fell in the hallway as she was walking toward the elevator. No evidence was presented that the condition of the floor either caused or contributed to the fall. *Id.* at 679, 347 S.E.2d at 527. The Court distinguished Hairston's ability to testify concerning the occurrence from the *Alvis* line of cases, where employees "were rendered un-

conscious . . . and were unable to recall the details of the accident." *Id.* at 682, 347 S.E.2d at 529. The Court, therefore, declined to decide whether application of the presumption should be denied in all non-death cases. Instead, the Court held that "when the claimant, who is in a position of being able to explain the occurrence, fails to present evidence which establishes that the injury arose out of the employment the claim for compensation must be denied." *Id.*

■ In denying compensation to Hairston, the Court also concluded that "the circumstances of the . . . case are not such that the only rational inference to be drawn is that the fall arose out of Hairston's employment." *Id.* That conclusion was based on the long established rule that in order for an employee to benefit from the presumption, there must be both an absence of conflicting evidence of causation and "the circumstances which form the basis of the presumption must be of sufficient strength from which the only rational inference to be drawn" is that the injury arose out of the employment. *Dillon*, 219 Va. at 642, 248 S.E.2d at 824 (quoting *Hopson v. Hungerford Coal Co.*, 187 Va. 299, 305-06, 46 S.E.2d 392, 394-95 (1948)). Thus, the employee is not entitled to the presumption upon a mere showing that she was in the course of her employment when the accident occurred, the so-called "positional risk" doctrine. *Id.* at 640, 248 S.E.2d at 823.

The present case presents a true unexplained accident. Unlike *Dillon* and *Metcalf*, the record in this case is devoid of evidence tending to negate the inference that the cause of Helmes' injuries was work related. The accident reconstruction specialist testified that "it's undetermined right [n]ow what caused the steering maneuver that we're talking about. . . . There were only a couple of things that could be ruled out from the evidence. Just one of those being a flat tire . . . ." The evidence does not establish that Helmes was exceeding the recommended speed or that the automobile had mechanical deficiencies. No evidence established that Helmes had a health problem that may have caused a sudden emergency. The commission concluded, and the employer did not contend otherwise, that "no probable cause for sudden reaction by [Helmes] had been established." In addition, the commission found that Helmes' condition disabled her from testifying "whether she had any sudden health problem or other personal reaction which would have caused her to act in an unusual

manner."

The circumstances of the present case are such that the only rational inference to be drawn from the evidence is that the accident arose out of Helmes' employment. The evidence failed to establish that the car was mechanically defective or that the accident was the result of idiopathic factors. Although no evidence established that animal life was present on the roadway at the time of the accident, the evidence established that wild animals crossed the road with some regularity. The commission found "that wild deer and turkeys were seen about once a week by persons who traveled the road" and that in one instance a car had struck a deer within two years of Helmes' accident. The evidence further showed that Helmes made a sudden steering maneuver to the right before her automobile turned over and came to rest off the road in a ditch. The steering maneuver is consistent with the inference deducible from the evidence that Helmes swerved to avoid hitting an animal and in doing so ran off the road. The presence of wild animals on the roadway represented a hazardous condition of employment to which Helmes was exposed by virtue of her employment.

Based on our conclusion that Helmes has met the requirements for application of the presumption, we remand the case to the commission for proceedings consistent with this holding.

*Reversed and remanded.*

Barrow, J., concurred.

Cole, J., dissenting.

I respectfully disagree with the holding of the majority that extends, without legislative authorization, the presumption applicable in unexplained death cases to non-death cases where the nature of the injuries renders the employee neurologically disabled and unable to recall the details of the accident. I further disagree with the majority and agree with the finding of the Industrial Commission that Helmes failed to prove that the accident arose out of her employment because the evidence fails to establish "the critical link between the conditions of the workplace and the injury."

In 1938 the Supreme Court adopted the unexplained death presumption:

Where an employee is found dead as the result of an accident at his place of work or near by, where his duties may have called him during the hours of his work, and there is no evidence offered to show what caused the death or to show that he was not engaged in his master's business at the time, the court will indulge the presumption that the relation of master and servant existed at the time of the accident, and that it arose out of and in the course of his employment.

*Sullivan v. Suffolk Peanut Co.*, 171 Va. 439, 444, 199 S.E. 504, 504 (1938). During the ensuing fifty years, the Supreme Court has not applied the unexplained death presumption to non-death cases in the absence of specific legislation creating such a presumption. *See* Code § 65.1-47.1 (presumption as to death or disability from respiratory disease, hypertension or heart disease). In fact, the Supreme Court has refused to expand the presumption to include non-death cases when confronted with the occasion to do so. *See Metcalf v. A.M. Express Moving Systems, Inc.*, 230 Va. 464, 468-69, 339 S.E.2d 177, 180 (1986).

In *Metcalf*, an assault case, the Supreme Court refused to decide whether it would apply the presumption to any non-death cases. The Court held that the presumption did not apply in any event because for it to be available "there must be an absence of contrary or conflicting evidence . . . and the circumstances which form the basis of the presumption must be of sufficient strength from which the only rational inference to be drawn is that death arose out of and in the course of the employment." *Id.* at 469, 339 S.E.2d at 180.

In reaching its decision, the majority also does not accept the findings of fact of the Industrial Commission, as we are required to do. Code § 65.1-98. The commission found that the road was not dangerous and that the evidence was insufficient to establish a cause for the car accident. The commission further found that no probable cause was established to account for the sudden reaction by the driver; there was no evidence that the car had mechanical deficiencies, although no investigation of its condition was conducted because the car was destroyed following the accident; there

was no evidence to suggest the existence of an employment-caused hazard in the roadway; and there was no evidence that animals which populated the area created an emergency or that the animals were so numerous that they constituted a special risk of the employment. Based upon these findings, the commission, citing *County of Chesterfield v. Johnson,* 237 Va. 180, 376 S.E.2d 73 (1989), denied compensation because the evidence failed to establish "the critical link between the conditions of the workplace and the injury." *Id.* at 186, 376 S.E.2d at 76.

In *United Parcel Service v. Fetterman,* 230 Va. 257, 336 S.E.2d 892 (1985), the Supreme Court said that "[a]n accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." *Id.* at 258, 336 S.E.2d at 893. The Court further said that the "arising out of" test excluded "an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, incidental to the character of the business, and not independent of the master-servant relationship." *Id.* at 258-59, 336 S.E.2d at 893. In *Johnson,* the Supreme Court said that "[i]n Virginia, we apply the 'actual risk' test to determine whether workplace injuries are compensable. . . . We do not apply the positional risk test used in other jurisdictions where simply being injured at work is sufficient to establish compensability." 237 Va. at 185, 376 S.E.2d at 75-76 (citations omitted).

Upon the facts of this case, I find credible evidence in the record to support the findings of the Industrial Commission and none to support the findings of the majority. Although the evidence establishes that deer were seen occasionally on the roadway, as they are in all parts of Virginia, it is pure surmise and speculation to find that they caused this accident. The majority further found that the presence of wild animals on the roadway represented a hazardous condition of employment to which Helmes was exposed by virtue of her employment. The majority has decided "that the only rational inference to be drawn from the evidence is that the accident arose out of Helmes' employment." This factual determination is contrary to the findings of the commission. The commission specifically found that the evidence did not establish any link between the conditions of the workplace and the injury.

In summary, I would not extend the unexplained death presumption to non-death cases. I would find that the claimant did not prove by a preponderance of the evidence that there was a causal connection between her injury and the conditions under which the employer required her work to be performed. For these reasons, I would affirm the decision of the Industrial Commission.