COURT OF APPEALS OF VIRGINIA


Present:  Judge Bray, Senior Judges Cole and Overton
Argued at Richmond, Virginia


KAREN D. MALLORY, on behalf of
 VICTOR REGINALD MALLORY, SR. (DECEASED)
                                        MEMORANDUM OPINION* BY
v.   Record No. 1226-99-2              JUDGE NELSON T. OVERTON
                                            JANUARY 27, 2000
WILLIAM OSCAR TYLER AND
 UNINSURED EMPLOYER'S FUND


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

         Ruth E. Nathanson (Maloney, Huennekens,
         Parks, Gecker & Parsons, on brief), for
         appellant.

         Theodore J. Burr, Jr. (Outten, Barrett, Burr
         & Sharrett, P.C., on brief), for appellee
         William Oscar Tyler.

         Christopher D. Eib, Assistant Attorney
         General (Mark L. Earley, Attorney General;
         Richard L. Walton, Jr., Senior Assistant
         Attorney General, on brief), for appellee
         Uninsured Employer's Fund.


     Karen D. Mallory ("Mallory"), on behalf of Victor Reginald

Mallory, Sr. ("decedent"), appeals a decision of the Workers'

Compensation Commission (commission) denying her application

alleging a September 6, 1996 injury by accident resulting in the

decedent's death.  Mallory contends that the commission erred in

finding that (1) the decedent, a cab driver, left the scope of

---

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

his employment and the protection of the Workers' Compensation Act ("the Act") when he broke employer's rules; (2) the presumption contained in Southern Motor Lines v. Alvis, 200 Va. 168, 104 S.E.2d 735 (1958), was not applicable to this case; and (3) the decedent engaged in willful misconduct which barred an award of benefits. Finding no error, we affirm the commission's decision.

## I.

On appeal, we view the evidence in the light most favorable to the prevailing party below. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

A claimant must prove that an injury arose out of and in the course of his employment to qualify for any benefits under the Act. See Pinkerton's, Inc. v. Helmes, 242 Va. 378, 380, 410 S.E.2d 646, 647 (1991).

> An act is within the scope of the employment relationship if
>
> "(1) it be something fairly and naturally incident to the business, and (2) if it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account."

*Smith v. Landmark Communications, Inc.*, 246 Va. 149, 151-52, 431 S.E.2d 306, 307-08 (1993) (citations omitted). Unless we can say as a matter of law that Mallory's evidence sustained her burden of proof, the commission's findings are binding and conclusive upon us. See *Tomko v. Michael's Plastering Co.*, 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

In holding that the decedent's death occurred after he left the scope of his employment, the commission found as follows:

> [T]he evidence clearly establishes that the [decedent] had just dropped off a fare in the Washington Park area on the west side of town. He had been instructed by the dispatcher for the employer to go to the Holiday Inn on the east side of town and pick up a fare. Both of the women the [decedent] picked up testified that [he] was heading from the Washington Park area when they flashed their lights at the cab, causing him to stop. The [decedent] voluntarily turned his cab around and the women got in the cab and headed in the opposite direction of his assigned fare back toward Washington Park.
>
> The [decedent] broke his company's rules by disobeying the instructions given to him by the dispatcher. As such, [he] left the scope of his employment and the protection of the . . . Act.
>
> Moreover, any evidence that the [decedent] was involved in a car jacking is purely speculative. The evidence consisted mostly of otherwise uncorroborated accounts from people incarcerated and accused of the [decedent's] murder who indicated that the [decedent] was involved in a drug deal and/or solicitation of sex. Billy Borum, an undercover officer, testified based on his knowledge, experience and a review of some

of the facts surrounding the murder, that he believed the [decedent] was robbed. Even if we accept this speculative testimony that the [decedent] was robbed and did not participate in any illegal activity, he was robbed after he deviated from his employment.

The evidence included the testimony of William Tyler, employer's written rules and regulations, and Section 86-91 of the City Code of Emporia, which Tyler had instructed his employees to comply with. This credible evidence supports the commission's finding that employer's rules required that its cab drivers obey the dispatcher's instructions regarding picking up passengers at a designated location and that they were not permitted to pick up passengers unless assigned by the dispatcher or located at a cab stand. Credible evidence also established that the decedent was made aware of employer's rules before his death.

Furthermore, undisputed evidence established that the decedent deviated from his employment when, instead of continuing to drive away from Washington Park, he voluntarily turned his cab around, picked up the two women, and headed back toward Washington Park instead of in the direction of the Holiday Inn. Based upon this evidence, the commission could reasonably conclude that the decedent was not engaged in an activity fairly and naturally incidental to employer's business immediately prior to his death. Rather, the evidence permitted

the inference that the decedent broke employer's rules and removed himself from the scope of his employment before his death, regardless of what occurred thereafter.

Because Mallory's evidence did not prove as a matter of law that the decedent was acting in the course of his employment at the time of his death, the commission's findings are binding and conclusive upon us.

## II.

In Southern Motor Lines Co. v. Alvis, 200 Va. 168, 104 S.E.2d 735 (1958), the Supreme Court recognized the following presumption:

> [W]here an employee is found dead as the result of an accident at his place of work or near-by, where his duties may have called him during the hours of his work, and there is no evidence offered to show what caused the death or to show that he was not engaged in his master's business at the time, the court will indulge the presumption that the relation of master and servant existed at the time of the accident and that it arose out of and in the course of his employment.

Id. at 171-72, 104 S.E.2d at 738.  However,

> "[w]here liability is imposed on the employer on presumptive evidence to the effect that the death arose out of the employment, there must be an absence of contrary or conflicting evidence on the point and the circumstances which form the basis of the presumption must be of sufficient strength from which the only rational inference to be drawn is that death arose out of and in the course of the employment."

- 5 -

<u>Winegar v. Int'l Telephone & Telegraph</u>, 1 Va. App. 260, 263, 337 S.E.2d 760, 761 (1985) (quoting <u>Hopson v. Hungerford Coal Co.</u>, 187 Va. 299, 305, 46 S.E.2d 392, 395 (1948)).

In this case, contrary and conflicting evidence existed with respect to the circumstances surrounding the decedent's death.  As fact finder, the commission was entitled to weigh the evidence and to resolve the conflicting inferences deducible from that evidence against Mallory.  "Matters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission, and are conclusive and binding on the Court of Appeals."  <u>Kim v. Sportswear</u>, 10 Va. App. 460, 465, 393 S.E.2d 418, 421 (1990) (citation omitted).

Credible evidence supports the commission's inference that prior to the decedent's death, he left the scope of his employment when he willfully violated employer's rules and went on a frolic of his own.  That is, the decedent was not "where his duties . . . called him" at the time of his death, rendering the presumption inapplicable.  Here, unlike <u>Alvis</u>, credible evidence supports the rational inference that the decedent's death did not occur in the course of or arise out of his employment.  Accordingly, the commission did not err in refusing to apply the <u>Alvis</u> presumption.

III.

Because our rulings on Issues I and II dispose of this appeal, we need not address this issue.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>