COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Willis and
          Senior Judge Hodges
Argued at Alexandria, Virginia


GEORGE A. ROBERSON, CPA and
 SELECTIVE INSURANCE COMPANY OF AMERICA
                                     OPINION BY
v.    Record No. 2609-94-4     CHIEF JUDGE NORMAN K. MOON
                                   NOVEMBER 21, 1995
BONNIE S. WHETSELL, ADMINISTRATOR
 OF THE ESTATE OF MICHAEL B. WHETSELL


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Edward H. Grove, III (Brault, Palmer, Grove,
            Zimmerman, White & Mins, on brief), for
            appellants.

            William C. Mims (Worcester, Mims & Atwill,
            P.C., on brief), for appellee.


     Michael B. Whetsell was shot and killed as he drove from his

employer's office to the building where he worked as a custodian.

 The Workers' Compensation Commission ruled that Whetsell's death

arose out of his employment because that employment required him

to drive through a dangerous area.  We agree and affirm because

credible evidence proved that Whetsell's exposure to gunfire was

heightened by the environment in which he worked.

     Whetsell was a custodian working for appellant George

Roberson.  Whetsell's job was to maintain the Jackson

Professional Building, a medical office complex in Leesburg.

Whetsell received his paycheck every Tuesday, and on that day

drove to Roberson's main office to pick up his check and receive

special instructions for work he was to do that week.  The only

direct route to the main office took him past Loudoun House, a

subsidized housing project bordered on one side by Edwards Ferry Road.

On June 16, 1992, Whetsell picked up his check and was driving back to the Jackson Building on Edwards Ferry Road at about 4:30 p.m. when he was struck by a bullet. The bullet split his spine, and he died three days later. No one has been charged in the shooting. Investigation revealed that the bullet came from the direction of Loudoun House, and reenactment of the shot established the probable location as the upper level of Loudoun House.

The claimant, Whetsell's surviving spouse, presented considerable evidence on the dangers posed by traveling near Loudoun House. The town manager of Leesburg, Stephen C. Brown, testified that Loudoun House has a higher incidence of police activity than any other place in town. Crime statistics for Leesburg established that the northeast quadrant of the city has the highest incidence of illegal drug activity, and that Loudoun House is the focus of that activity. Of particular relevance here, the town manager testified that the discharge of firearms at Loudoun House is a special concern for the Leesburg police. Mr. Brown also testified that the intersection where Whetsell was shot posed a greater risk of exposure to criminal activity than any other intersection in Leesburg.

Whetsell's son, who had lived within several blocks of Loudoun House for some years before his father's death, testified that he heard gunfire from Loudoun House every day. Whetsell on

numerous occasions had expressed concern over the increase in drug activity and use of firearms at the complex.

The issue on appeal is whether Whetsell's fatal injuries arose out of his employment. Whether an injury arose out of employment is a mixed question of law and fact. Plumb Rite Plumbing Service v. Barbour, 8 Va. App. 482, 483, 382 S.E.2d 305, 305 (1989). Factual findings of the commission will not be disturbed on appeal, if based on credible evidence. Hercules, Inc. v. Gunther, 13 Va. App. 357, 361, 412 S.E.2d 185, 187 (1991).

An accident arises out of the employment if a causal connection is established between the employee's injury and the conditions under which the employer required the work to be performed. The causative danger must be peculiar to the work and not common to the neighborhood. R&T Investments, Ltd. v. Johns, 228 Va. 249, 252-53, 321 S.E.2d 287, 289 (1984).

Our inquiry is not ended simply because the general public is also exposed to the risk. As the Supreme Court stated in R&T Investments Ltd., 228 Va. at 253, 321 S.E.2d at 289, "[t]he mere fact that the hazard is one to which the general public is likewise exposed is not . . . conclusive against the existence of such causal relationship. Honaker v. Hartley, 140 Va. 1, 11, 124 S.E. 220, 222 (1924). The requisite nexus in an assault case is supplied if there is `a showing that the probability of assault was augmented either because of the peculiar character of the claimant's job or because of the special liability to assault

associated with the environment in which he must work.'  1 A. Larson, <u>The Law of Workmen's Compensation</u> § 11.11(a) at 3–161 (1984)."  Jobs often held to pose a special risk of assault are those that involve working in or traveling through dangerous areas.  1 A. Larson, <u>supra</u>, § 11.11(b) at 3–192–95.[1]

In <u>R&T Investments, Ltd. v. Johns</u>, an employee of a coin shop who regularly made bank deposits as part of her job was injured during a bank robbery.  Although the money she had planned to deposit was stolen in the robbery, there was no indication that she had been targeted or even recognized as a coin shop employee.  The Court found that "the claimant's regular presence in a branch bank, an environment that is prone to the violence of robbery, exposed her to a special risk of assault," <u>R&T Investments, Ltd.</u>, 228 Va. at 254, 321 S.E.2d at 290, and therefore the injury arose out of the employment.  In so holding, the Court rejected the employer's argument that all of the customers were equally exposed to the danger of robbery, and that the robbery was a noncompensable "random event."  <u>Id.</u>[2]

---

[1]    A threshold question is whether this case can properly be decided on principles developed for assault cases, where no one has been arrested and it is unknown whether the shooting was intentional.  We see no reason to distinguish between intentional shooting and shooting where intent cannot be established.  If the employee's risk of exposure to either was heightened by the conditions of his employment, the resulting injury arose out of the employment.  The gunfire fatal to Whetsell was necessarily unlawful, because a local ordinance prohibited the discharge of firearms within town limits.

[2]    The appellant seeks to distinguish <u>R&T Investments, Ltd.</u> on the ground that the claimant was awarded benefits because of the nature of her employment as a funds courier, and not because of her presence in a high crime area, i.e., the bank.  While the

Claimant had to prove that Whetsell's risk of being shot was peculiar to his employment. R&T Investments, Ltd., 228 Va. at 255, 321 S.E.2d at 290. Claimant sought to meet this burden by presenting evidence that the intersection near Loudoun House, which was Whetsell's only direct route to Roberson's office, posed a heightened risk of exposure to gunfire and other criminal activity. This evidence, much of which came from Leesburg's town manager, was credible and uncontroverted. Based on that evidence, the commission found that "the employee's occupation required him to drive through a crime ridden area and by a building notorious for its frequent shootings." While the commission's language is expansive, its basic conclusion--that Whetsell's employment exposed him to a heightened risk of being shot--is supported by credible evidence. This evidence is sufficient to show that the injury arose out of Whetsell's employment.

This evidence distinguishes this case from those relied on by the appellants. In Baggett and Meador Cos. v. Dillon, 219 Va. 633, 248 S.E.2d 819 (1978), the Court denied benefits to a truck driver who was killed by gunfire while parked at a rest stop. The Court held that the risk was not peculiar to the claimant's work because there was no indication that he was targeted as a truck driver or that, as a truck driver, he was subjected to a

claimant's status as a courier was a factor in the Court's decision, her regular presence in a "dangerous" location was equally important. The Court's decision would otherwise make little sense, as the claimant was not targeted as a courier.

greater risk of being shot on a highway than the general public. In contrast, claimant has shown that Whetsell was required, as a condition of his employment, to pass by a public housing complex where gunfire was commonplace. The general public passes through the intersection also, just as they did through the bank in R&T Investments, Ltd. But unlike the general public, Whetsell was required, as a condition of his employment, to make "repeated, regular trips" through the area. R&T Investments, Ltd., 228 Va. at 255, 321 S.E.2d at 290.

The claimant's evidence of gunfire around Loudoun House also distinguishes this case from Hill City Trucking v. Christian, 238 Va. 735, 385 S.E.2d 377 (1989), and Metcalf v. A.M. Express Moving Systems, Inc., 230 Va. 464, 339 S.E.2d 177 (1986). In Metcalf, the claimant expressly declined to rely on an increased risk of assault peculiar to his employment, relying instead on the presumption in death cases set forth in Southern Motor Lines Co. v. Alvis, 200 Va. 168, 104 S.E.2d 735 (1958). Claimant in this case took the opposite approach, and provided evidence to support the claim of increased risk.

In Hill City Trucking v. Christian, the Supreme Court denied compensation to a truck driver assaulted by robbers because the claimant did not show that he was targeted for assault as a truck driver, and because anyone traveling down the road at 3:00 a.m. was subject to the same risk. The claimant did not show that there was a greater risk of assault during the hours when or on the roads where he was required to drive. Unlike the claimant

- 6 -

here, the claimant in <u>Hill City Trucking</u> failed to supply the causal nexus between the risk and the employment, and thus failed to show that his injuries arose out of his employment.

Viewing the evidence in the light most favorable to claimant, we hold that a direct causal connection was established between Whetsell's fatal injuries and the conditions of his employment.  Therefore, we affirm the decision of the commission.

<u>Affirmed.</u>