COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges Humphreys and Huff
Argued at Alexandria, Virginia

GEORGE KING

v.         Record No. 1150-18-4

DTH CONTRACT SERVICES INC. AND
  AMERICAN SELECT INSURANCE COMPANY

OPINION BY
JUDGE GLEN A. HUFF
FEBRUARY 5, 2019

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Richard M. Reed (The Reed Law Firm, P.L.L.C., on brief), for
appellant.

Robert M. McAdam (KPM Law, on brief), for appellees.

A former co-worker stabbed George King ("claimant") in the face, blinding him, while

claimant was working alone as the overnight attendant at a rest area for DTH Contract Services,

Inc. ("employer"). The assailant committed suicide later the same day, and his motives for the

assault were never discovered. Claimant sought workers' compensation benefits for the injuries

he sustained in the assault. Those benefits were denied by a divided Workers' Compensation

Commission, reasoning that because claimant knew the assailant, the attack was not random, and

since the motive for the attack was unknown, claimant failed to prove that the injury arose out of

a risk of employment. He appeals that decision.

Claimant's appeal turns on whether the assault, and thus his injuries, "arose out of" his

employment as the rest area overnight attendant. The legal effect of the assailant's motive on the

"arising out of" question is central to resolving this appeal. Because the claimant did not prove

that the assailant's motive was employment related, instead of personal, and the claimant and

assailant knew each other, the Commission held the assault did not arise out of claimant's

employment. Claimant argues that, when an assailant's motive is unknown, he can still prove the assault arose out of his employment if the employment placed him at a greater risk of assaults than the general public. Thus he argues the Commission erred by refusing to consider whether his employment presented a risk of assault.

A claimant may suffer a random attack from someone he knows, and a random attack is compensable if the employment generates a risk of assault to the claimant. Thus, a claimant may prove an assault arose out of his employment if he can prove the job subjected him to greater risk of assault—even if he knew his assailant—as long as no evidence suggests the motivation for the assault was personal. Therefore, this Court reverses the Commission and remands this case for the Commission to consider claimant's argument that his job placed him at greater risk of assault.[1]

## I. BACKGROUND

"On appeal, [this Court] view[s] the evidence in the light most favorable to the prevailing party before the [C]ommission." Portsmouth Sch. Bd. v. Harris, 58 Va. App. 556, 559 (2011) (quoting Central Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42 Va. App. 264, 269 (2004)). So viewed, the evidence is as follows.

Claimant began working at a rest area on Interstate 66 in 2013, initially working the evening shift. At the time of the assault, claimant was the overnight, 10:00 p.m. to 6:00 a.m., attendant for the rest area. As the overnight attendant, claimant was required to keep the restrooms clean, empty the trash cans, and generally keep an eye on the rest area, reporting any

---

[1] Claimant raises three additional assignments of error that, taken together, argue the evidence showed an increased risk of assault to overnight employees at the rest area. Because he only seeks a remand for the Commission "to make a determination as to whether the Claimant suffered an assault as a result of an elevated risk associated with his work environment," this Court need not address whether the evidence showed an increased risk of assault. This Court expresses no opinion on whether the Commission should find that claimant's employment increased the risk of assault.

criminal activity to the police. He was the only employee on site overnight. He was to remain locked in the office when not cleaning or making rounds to check on the rest area.

He was also required to make hourly "safety check" phone calls. The purpose of these calls was to confirm that the rest area was staffed and to assure the "safety of the attendant." If the attendant did not make the phone call, he would be called. If he was not reached at the rest area office, his supervisor would be called. The supervisor would then call him on his cell, and if he did not reach the attendant, the supervisor would travel to the rest area and call the police if necessary.

In June 2014, Khalif Privott ("assailant") began working at the same rest area as an overnight attendant. Assailant repeatedly failed to make the required safety calls. Assailant quit in March 2015 without providing any notice, stating "I can't do this anymore."

Claimant and assailant never worked the same shifts at the same rest area. They either worked different days, different sides of the interstate, or claimant worked the evening shift and assailant, working the overnight shift, would relieve claimant. Claimant testified he did not move to the overnight shift until after assailant quit.

In the early morning of July 13, 2016, over a year after assailant quit, he stabbed claimant in the eyes with a screwdriver while claimant was returning to the office after making his last check around the rest area. Claimant did not recognize assailant during the assault, and assailant did not speak a word during the assault. Assailant never communicated his motives to anyone and committed suicide later the same day. The parties stipulated assailant "had been using drugs and 'was disturbed'" before the assault.

Claimant was permanently blinded by the assault and sought workers' compensation benefits. The employer defended against the claim by arguing that the assault did not arise out of the employment.

- 3 -

At the hearing, claimant attempted to establish that the risk of assault was elevated while working at the rest area. He claimed the conditions of his work—alone all night, locked in the office when not doing his rounds—augmented the risk of assault, and he attempted to show that crime at rest areas rendered them dangerous in several unique ways.

First, he introduced a list of all calls to the police from all the rest areas in the state (broken down by location) for a year between 2015 and 2016. He only provided calls to police, not confirmed criminal activity, and did not provide any comparative call data for locations other than rest areas. Moreover, his supervisor was unaware of any other violent crimes taking place at that rest area and did not recall any other attendants being crime victims.

Second, he introduced House Joint Resolution 96 from 1990 as evidence that rest areas are trouble spots for crime. It stated as follows:

> [C]rimes committed at Virginia's highway rest stops have recently begun to receive considerable attention; and
> [I]n the past twelve months, highway rest stops have been the scene of two homicides, ten assaults, twelve grand larcenies, nine petty larcenies, twenty-six drug violations, two cases of vandalism, twenty-four instances of prostitution, one kidnapping with forceable [sic] rape, forty-three cases of homosexual activity and recovery of five stolen automobiles; . . . .

Third, a state police officer testified that the state police had a practice of routinely checking the rest area. He testified the rest area had a history of problems with "illicit sexual behavior" and that on at least one occasion an undercover officer had been assaulted. Although not definitive, he stated it was possible that the risk of crime in rest areas was higher than in other areas open to the general public.

The deputy commissioner denied the claim. He held the evidence failed to prove that assailant was motivated by claimant's employment. He also concluded the evidence did not show an increased risk of assault at the rest area. The deputy commissioner held the findings of the House Resolution were too old to be relevant and the recent call data only showed one

- 4 -

violent incident in the rest area. He also noted that the evidence lacked comparative data for crimes in other areas.

Claimant sought review before the full Commission. The Commission held that because claimant knew assailant, the attack was not random. Thus, it held, the assault could only arise out of the employment if assailant had been motivated directly by claimant's job. It then found assailant's motive was unknown and therefore claimant failed to meet his burden. Commissioner Marshall concurred in the result. He disagreed that claimant's prior acquaintance with assailant meant that only assailant's motives were relevant to whether the assault arose of the employment. He would have agreed, however, with the deputy commissioner's conclusion that claimant failed to prove the rest area exposed him to a greater danger of assault than the general public faced.

This appeal followed.

## II. STANDARD OF REVIEW

"Whether an employee's work-related injury arises out of his employment 'involves a mixed question of law and fact, which [this Court] review[s] *de nov*o on appeal.'" Turf Care, Inc. v. Henson, 51 Va. App. 318, 324 (2008) (quoting Blaustein v. Mitre Corp., 36 Va. App. 344, 348 (2001)). "Factual findings of the [C]ommission will not be disturbed on appeal, if based on credible evidence." Roberson v. Whetsell, 21 Va. App. 268, 271 (1995). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Mktg. Profiles, Inc. v. Hill, 17 Va. App. 431, 435 (1993) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279 (1986)).

Although this Court gives "deference, on appeal, to the [C]ommission's construction of the Workers' Compensation Act, [it is] 'not bound by the [C]ommission's legal analysis.'"

Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 248 (2002) (quoting USAir, Inc. v. Joyce, 27 Va. App. 184, 189 n.1 (1998)).  Moreover, the Workers' Compensation Act is "remedial legislation" that is "liberally construed in favor of the injured employee."  E.I. du Pont de Nemours & Co. v. Eggleston, 264 Va. 13, 17 (2002).

### III.  ANALYSIS

The Commission held the assault did not "arise out of" claimant's employment at the rest area—and denied compensation—because claimant did not prove the assailant was motivated in his attack by claimant's position as an employee at the rest area.  It held that only the assailant's motive mattered in determining whether the assault "arose out of" the employment because claimant knew the assailant.  It therefore refused to consider whether claimant's employment generated a risk of assault.  This was error.

Even though claimant knew assailant, the assault could still arise out of the employment as long as random assaults were a risk of the job—i.e. the job placed him at greater risk of assault than the general public—and there was no evidence the assailant's motives were personal.  Here, there was no evidence the assailant targeted claimant for personal reasons; the assailant's motives are unknown.  Although a claimant generally bears the burden of proving that the assailant's motive was not personal, where the motive is unknowable, this Court assumes the motive is not personal.  See, e.g., Roberson, 21 Va. App. 268 (holding a random shooting by an unknown assailant arose out of the employment without discussing the assailant's motive, when the employment exposed the employee to increased risk of random shootings).  Thus, the Commission should have considered claimant's argument that his employment increased the risk of assault.

An injury is compensable under the Workers' Compensation Act only when it "aris[es] out of and in the course of the employment."  Code § 65.2-101.  "[T]he expressions 'arising out

of' and 'in the course of' are used conjunctively and are not synonymous. Both conditions must be satisfied before compensation can be awarded." Graybeal v. Bd. of Sup'rs of Montgomery Cty., 216 Va. 77, 78 (1975). "The words 'arising out of' . . . refer to the origin or cause of the injury while the language 'in the course of' pertains to the time, place, and circumstances under which the accident occurred." R & T Investments, Ltd. v. Johns, 228 Va. 249, 252 (1984). Here, claimant was injured at the worksite and employer does not contest that the assault was in the course of claimant's employment. The only dispute is whether the assault arose out of the employment.

"Arising out of" is a required causal link between the injury and the employment. "An accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." City of Richmond v. Braxton, 230 Va. 161, 164 (1985) (quoting R & T Investments, 228 Va. at 252). "Virginia follows the 'actual risk' doctrine which 'excludes "an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment."'" Bernard v. Carlson Companies-TGIF, 60 Va. App. 400, 405 (2012) (quoting Taylor v. Mobil Corp., 248 Va. 101, 107 (1994)). Thus, if an injury "cannot fairly be traced to the employment as a contributing proximate cause," the injury is not compensable because it did not "arise out of" the claimant's employment. Stillwell v. Lewis Tree Serv., Inc., 47 Va. App. 471, 477-78 (2006) (quoting Combs v. Va. Elec. & Power Co., 259 Va. 503, 509 (2000)). "The mere fact that the hazard is one to which the general public likewise is exposed is not, however, conclusive against the existence of such causal relationship." R & T Investments, 228 Va. at 253. A claimant can establish the causal connection by showing employment conditions create "an *enhanced* risk" of injury. Bernard, 60 Va. App. at 407.

In assault cases, this causal link, showing an injury arises out of the employment, can be established in one of two ways. A claimant can establish an injury arose out of his employment by: one, showing the assault resulted from an increased risk of assault created by the employment, or two, proving his employment motivated assailant to attack. The Commission erred when it held only the second way is relevant if the claimant knew his assailant.

First, a claimant may establish that an assault arose out of employment when the conditions of the employment raise the risk of assault. See, e.g., Roberson, 21 Va. App. at 272-73. A claimant must show "that the probability of assault was augmented either because of the peculiar character of the claimant's job or because of the special liability to assault associated with the environment in which he must work." R & T Investments, 228 Va. at 253 (quoting 1 A. Larson, The Law of Workmen's Compensation § 11.11(a), at 3-161 (1984)). For example, "the peculiar character" of employment that requires a claimant to carry or handle cash may increase the risk an employee is robbed and assaulted while conducting his employer's business. R & T Investments, 228 Va. at 253; see also Southland Corp. v. Gray, 18 Va. App. 366, 368 (1994) (noting that the "employer believed the risk [of robbery] to be so unusual that it prohibited bank deposits from being made after 3:00 p.m.," demonstrating that injuries from a robbery arose out of the employment). Similarly, when an employee must regularly drive through or travel to a dangerous area, Roberson, 21 Va. App. at 271; Plummer v. Landmark Commc'ns, Inc., 235 Va. 78, 86-87 (1988), "the environment in which he must work" may increase the risk that an employee is assaulted while doing his job. See also Uninsured Employer's Fund v. Gabriel, 47 Va. App. 95, 103-04 (2005) (holding death in 9/11 plane crash resulted from the increased risk of terrorism associated with employment that required regular plane travel), rev'd in part, vacated in part, on other grounds, 272 Va. 659 (2006).

Second, a claimant may show that an assault arose out of his employment by proving the claimant's employment motivated the assailant. To do so, "a claimant must establish 'that the assault was directed against him as an employee, or because of his employment.'" Smithfield Packing Co. v. Carlton, 29 Va. App. 176, 181 (1999) (quoting Continental Life Ins. Co. v. Gough, 161 Va. 755, 760 (1934)). For example, when an assailant retaliates against a claimant because of the claimant's performance of his job, the assault is "directed against him . . . because of his employment." Id. at 181-82; see Thomas Nelson Ltd. P'ship v. Fritz, 11 Va. App. 269, 273 (1990) (affirming an award where the Commission found the evidence supported an inference the employee was assaulted and killed by a vagrant when he attempted to remove the vagrant from employer's premises); see generally Farmers' Mfg. Co. v. Warfel, 144 Va. 98, 99 (1926) (affirming award when co-worker killer's motivation seemed to be a dispute over how deceased employee performed his job earlier the evening he was murdered).

Proving an increased risk of assault or proving the assailant's motive was employment related are separate ways to establish that an assault arose out of the employment. Upon closer examination, however, they overlap in several ways. Both ways are ultimately aimed at proving the causal link between the employment and the assault.

Because both are ways of proving the employment caused the assault, both types of claims are defeated if the assailant's motive is personal to the claimant. Richmond Newspapers, Inc. v. Hazelwood, 249 Va. 369, 373 (1995). If an assailant's motive is purely personal lacking any nexus to the employee's employment, the risk of assault to the employee is the same without the employment as it is with it. Thus, if an assailant's motive is personal, the employment cannot be a proximate cause of the assault, and the assault cannot arise out of the employment.

Moreover, because it is the claimant's burden to establish that the assault arose out of the employment, Hill City Trucking, Inc. v. Christian, 238 Va. 735, 739 (1989), claimant's burden

- 9 -

includes, in the appropriate case, establishing that the assailant's motive was not personal.  Cf. Stillwell, 47 Va. App. at 478 (holding that an employee in a fight with a co-worker had to prove, to receive compensation, both that the fight was not personal and that the employee was not responsible for the fight).

When, however, the unique circumstances of the case render assailant's motive unknowable, the absence of motivation evidence does not create a bar against consideration of other factors that might satisfy the "arising out of" standard for compensation.  The decisions in Roberson and Plummer are instructive.  In each, the employee was shot by an unknown assailant while in a dangerous area.  Because the employment required the employee to frequent the dangerous area, both the Supreme Court, in Plummer, and this Court, in Roberson, concluded that the assault arose out of the employment.

In Roberson, the employee was shot as he drove by a building that had the highest volume of police calls in the city and where gunfire was regularly heard.  21 Va. App. at 270. Nothing in this Court's opinion suggested the assault was anything other than a random attack or stray shot and the assailant's motive was never discussed.  Nevertheless, because the employment exposed the employee to the increased risk of being shot by requiring him to drive through the dangerous area, this Court held the assault arose out of the employment.

Similarly, in Plummer, the employee was shot at 2:00 a.m. in a darkened parking lot while waiting to pick up newspapers for delivery.  The employee initially sought workers' compensation, but the Commission noted the attack "was an arbitrary and capricious act by an unknown assailant who just happened upon the claimant's vehicle."  Plummer, 235 Va. at 86. When the employee filed a negligence action, she alleged more details about the risks associated with the location from which she had to pick up the newspapers.  She alleged she was required to wait "for extended periods of time" in a "deserted, dimly lit parking lot."  Id.  The Supreme

- 10 -

Court never discussed the assailant's motive, but still held that with the additional details regarding the risk associated with the employment, the assault arose out of the employment.

These cases demonstrate that when the assailant's motive is unknowable, such as when the assailant is unknown, the claimant does not have to affirmatively establish that the assailant's motive is not personal. Unknowable motives of an assailant are not, by themselves, a bar to consideration of other factors by which a claimant may prove that the injury arose out of a risk of the employment.

Here, the Commission held that because claimant knew assailant, he could only establish the assault arose out of the employment if he could prove assailant was motivated by claimant's job. It concluded that if the assailant and claimant know each other, the assault between them could not result from an increased risk of assault. It effectively concluded that if the assailant and claimant know each other, the motive must either be employment related—and the assault arises out of the employment—or personal—and the assault could not arise out of the employment, even if the employment increased the risk of assault. Thus, it concluded it did not need to consider whether claimant's employment increased the risk of assault. That conclusion is in error. Cf. Park Oil Co. v. Parham, 1 Va. App. 166, 170 (1985) (holding an injury arose out of the employment based on an increased risk of traffic incidents at a gas station when a friend of the employee gunned his engine in an attempt to scare but not hit the employee and the friend's vehicle's accelerator stuck so the friend's vehicle struck the employee).

In addition to a personal or employment related motive, an assailant may be motivated by neither and by random chance attack a person he happens to know. In fact, in finding assailant's motive was unknowable, the Commission acknowledged three possible motives: a personal dispute between the assailant and claimant, assailant possessing some resentment toward his

former employer, or the assault was "solely the product of a mind addled by drug use and psychosis."

The possibility of a random assault, even against someone the assailant knows, means claimant can establish the assault arose out of the employment when the employment increased the risk of assault. The mere fact that the claimant knew his assailant does not alter this analysis. Thus, the Commission erred in concluding that only motive is relevant if the assailant and victim knew each other.

When as here, the assailant's motive is unknowable, the Commission is not precluded from considering other evidence to satisfy the requirement that the injury arose from a risk of employment. The claimant can establish the assault arose out of the employment by proving the employment generated a risk of assault. The Commission erred in treating motive as the only relevant issue and declining to consider claimant's evidence that the job increased the risk of assault. Thus, this Court reverses and remands this case for the Commission to consider whether claimant was subject to an increased risk of assaults at his job.

## IV. CONCLUSION

The Commission erred in concluding that only the assailant's motive was relevant to the question of whether the assault arose out of employment. Claimant has the option to prove the assault resulted from an increased risk of assault connected to the employment, notwithstanding the fact that claimant and assailant are acquainted. Therefore, this Court reverses and remands for the Commission to undertake actions consistent with this opinion.

                                                    Reversed and remanded.

- 12 -