COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge Humphreys, and Senior Judge Annunziata
Argued by teleconference

GEORGE KING

MEMORANDUM OPINION[*] BY
v.      Record No. 1401-19-4                    JUDGE ROSEMARIE ANNUNZIATA
                                                JUNE 30, 2020

DTH CONTRACT SERVICES, INC. AND
 AMERICAN SELECT INS. CO.

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Richard M. Reed (The Reed Law Firm, P.L.L.C., on brief), for
> appellant.
>
> Robert M. McAdam (KPM Law, on brief), for appellees.

George King ("claimant") was blinded while working as an overnight attendant at a rest area for DTH Contract Services ("employer") when he was stabbed in the face by a former co-worker. The Commission denied claimant's application for compensation benefits, finding that he had not proved the attack arose out of his employment because claimant knew the assailant, the attack was not random, and the motive for the attack was unknown. Upon claimant's appeal to this Court, we reversed the Commission's decision and remanded the case "for the Commission to consider whether claimant was subject to an increased risk of assaults at his job." King v. DTH Contract Services, Inc., 69 Va. App. 703, 718 (2019).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Upon rehearing, the Commission again found that claimant's injuries did not arise out of his employment, as "neither the nature of the claimant's work nor the environment he worked in increased the probability of assault." This appeal followed.

BACKGROUND

The evidence, viewed in the light most favorable to employer, the party prevailing before the Commission,[1] established that on July 12-13, 2016, claimant was working the overnight shift, 10:00 p.m. to 6:00 a.m., at a westbound rest area on Interstate 66 in Prince William County. Claimant had been employed there since 2013. His duties included keeping the restrooms clean, emptying trash cans, and reporting any observed criminal activity to the police. He remained inside a locked, windowless office when he was not performing his duties on the grounds. Claimant was the only employee on site during his shift. He was required to make hourly phone calls to the Virginia Department of Transportation (VDOT) to confirm his presence and welfare on site.

Claimant's assailant, Khalif Privott, was employed at the same rest area from June 2014 until March 2015, but Privott and claimant did not work the same shifts. Privott quit without giving notice after he was reprimanded for failing to make the hourly calls to VDOT.

At about 5:30 a.m. on July 13, 2016, as claimant was returning to the office after making his last check around the grounds, Privott grabbed claimant by the back of his shirt and stabbed him repeatedly with a screwdriver. Claimant did not recognize Privott during the attack, and Privott said nothing during the assault. Privott left the rest area and committed suicide later that day without communicating to anyone his motive for the stabbing. Claimant's DNA was found on the screwdriver in Privott's pocket and on his clothes. The parties stipulated that Privott "had been using drugs and 'was disturbed'" before the assault.

---

[1] See, e.g., Portsmouth Sch. Bd. v. Harris, 58 Va. App. 556, 559 (2011).

ANALYSIS

A compensable injury under the Workers' Compensation Act must "aris[e] out of and in the course of the employment." Code § 65.2-101. "The words 'arising out of' . . . refer to the origin or cause of the injury while the language 'in the course of' pertains to the time, place, and circumstances under which the accident occurred." King, 69 Va. App. at 712 (quoting R & T Investments, Ltd. v. Johns, 228 Va. 249, 252 (1984)). There is no dispute in this case that claimant's injury occurred "in the course of" his employment. The only issue before this Court is whether the assault on claimant arose "out of" his employment. As the appellant, claimant must demonstrate that the Commission's ruling was reversible error. See Burke v. Catawba Hosp., 59 Va. App. 828, 838 (2012).

"[T]he Commission's determination regarding whether an injury arose 'out of' one's employment . . . [is] a mixed question of law and fact. The Court reviews the legal component of that determination *de novo*." O'Donoghue v. United Continental Holdings, Inc., 70 Va. App. 95, 103 (2019). The Commission's factual findings are "conclusive and binding" when based on credible evidence in the record and "'reasonable inferences'" drawn from that evidence. Va. Tree Harvesters, Inc. v. Shelton, 62 Va. App. 524, 532-33 (2013) (quoting Hawks v. Henrico Cty. Sch. Bd., 7 Va. App. 398, 404 (1988)). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991).

"The statutory language, 'arising out of and in the course of the employment,' should be liberally construed to carry out the humane and beneficial purposes of the Act." Baggett & Meador Cos. v. Dillon, 219 Va. 633, 637 (1978). But a liberal construction does not "authorize the amendment, alteration or extension of [the Act's] provisions." Id.

- 3 -

In defining the "arising out of" prong, Virginia uses "the 'actual risk test.'" Lucas v. Fed. Express Corp., 41 Va. App. 130, 134 (2003) (quoting Lucas v. Lucas, 212 Va. 561, 563 (1972)). This test requires proof that "the employment expose[d] the work[er] to the particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks." Id. (quoting Lucas, 212 Va. at 563). The requirement is met "only . . . 'if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." Va. Tree Harvesters, 62 Va. App. at 534 (quoting R & T Investments, 228 Va. at 252-53); accord O'Donoghue, 70 Va. App. at 104. But a hazard to which the general public is also exposed is not compensable. See R & T Investments, 228 Va. at 523; O'Donoghue, 70 Va. App. at 105.

An injury that

> arises 'out of' the employment . . . excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

Dillon, 219 Va. at 638 (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335 (1938)).

In this case, where the injury was caused by an assault, claimant had to demonstrate the requisite causal link by proof that a condition of his employment motivated the attack, see King, 69 Va. App. at 713, or exposed him to the "particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks," Lucas, 212 Va. at 563. Because Privott's motive was not known, to establish a compensable injury, claimant had to show "that the probability of assault was augmented either because of the peculiar character of

- 4 -

the claimant's job or because of the special liability to assault associated with the environment in which he must work." King, 69 Va. App. at 713-14 (quoting R & T Investments, 228 Va. at 253).

To this end, claimant presented evidence to the Commission that the safety procedures he was required to follow—remaining inside the locked office when not patrolling the rest area grounds and making hourly telephone calls to confirm his presence and welfare—demonstrated his employer's awareness of the risk to which claimant was exposed while working alone at night. The Commission rejected that premise, finding that "prudent safety precautions, standing alone, [do not] allow for the conclusion that the claimant's work environment exposed him to a greater risk of violent crime." But the Commission considered the safety precautions in context with the other evidence claimant presented.

Claimant introduced a document listing all calls made to the police reporting incidents at rest areas in Virginia between 2015 and 2016; the document showed 112 incidents were reported at the westbound rest area where claimant worked and 86 incidents were reported at the corresponding eastbound rest area. Captain Tom Bradshaw with the Virginia State Police testified that the list represented only reported incidents, not confirmed crimes. Bradshaw was unable to confirm that crimes were more likely to occur at the rest area where claimant worked than in any other area. Bradshaw also was not aware of any other rest area employees who were victims of violent crimes committed at the workplace. And there was no evidence comparing the level of crime at rest areas with their surrounding locales.

First Sergeant Assistant Special Agent Edmund Kelly testified that the State Police routinely patrol rest areas. Illicit sexual behavior was the principal criminal activity observed, and Kelly knew of one related incident in which an undercover officer was assaulted in 2000 or 2001. Claimant's supervisor, John Crabbe, testified that although individuals loitered and used

drugs at the rest area, the only incident of violent crime of which he knew was the assault on claimant. Additionally, claimant testified that he had not observed any violent criminal activity at the rest area during the several years he had worked there.

Claimant also introduced a report of a study authorized by the General Assembly in 1990, which showed that between January 1, 1989, and April 30, 1990, 133 criminal incidents were reported at the forty rest areas in Virginia. Five of the reported incidents were assaults.[2] At the rest area where claimant later worked, six crimes were reported, but only one involved violence. The report noted that more criminal activity occurred at night, but it also noted that most of the rest areas were unattended at night. The report did not include data regarding crime reported in localities surrounding the rest areas. The Commission found that absent data regarding crime in surrounding areas, the report failed to establish that "rest areas are more dangerous than other locales during similarly late hours."

Claimant contends that the Commission erred as a matter of law in not accepting that the House Joint Resolution authorizing the study established that rest areas are "inherently risky" and his employment at a rest area elevated his exposure to risk. The Commission noted, however, that the report concluded that the number of reported criminal incidents was "insignificant" compared to the number of visitors at the rest areas. There were 3.175 million visitors to the westbound Interstate 66 rest area during the time of the study, but only six reported criminal incidents. The Commission was "unpersuaded that a study conducted over twenty-six years prior to the assault perpetrated on this claimant constitutes credible evidence of the level of criminal activity existing in 2016." We find that the Commission did not abuse its discretion in

---

[2] Two assaults were fights, one assault was a domestic situation, one assault was possibly a homosexual encounter, and one assault involved a woman who was grabbed and released by an unknown male.

giving little weight to the report.  See Rios v. Ryan Inc. Central, 35 Va. App. 40, 44-45 (2001) (holding that admission of evidence is within the Commission's discretion).

The Commission held that claimant's injury did not arise out of his employment because he was not exposed to a greater risk of assault at a rest area than was the general public and the nature of his duties did not create a peculiar risk of assault.  Claimant's duties did not include, for example, handling or carrying money, a job function that may increase the risk of robbery or assault.  See R & T Investments, 228 Va. at 253-54 (holding that employee suffered a compensable injury while transacting her employer's business at a bank when it was robbed because making bank deposits was the employee's regularly assigned duty and banks were known as locations where robbery could occur); Southland Corp. v. Gray, 18 Va. App. 366, 368 (1994) (holding that store employee who was robbed as she left the store to make a bank deposit was entitled to compensation because having to make deposits as part of her job increased the risk of harm).

We find no grounds to overturn the Commission's ruling.  In Hill City Trucking v. Christian, 238 Va. 735, 737 (1989), the Supreme Court reversed compensation benefits that had been awarded to a truck driver who was robbed and shot on the highway while hauling goods for his employer.  The Court held that his injury did not arise out of his employment, as there was no evidence that he was assaulted because he was employed as a truck driver and any driver on the road at 3:00 a.m. also could have been assaulted.  Id. at 739-40.  In Dillon, the Supreme Court held that a truck driver who was killed by a random gunshot while stopped on the highway had not been exposed to a peculiar risk based on his employment or to a risk to which the general public also was not exposed.  See 219 Va. at 644.  Similarly, here, the evidence did not establish that claimant's injury arose out of his employment as a rest area attendant because he was not

exposed to a peculiar risk based on his employment or to a risk which the general public also was not exposed.

## CONCLUSION

We find that the Commission's decision was supported by credible evidence and the applicable law, and we affirm the ruling of the Commission.

<u>Affirmed</u>.