COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Frucci and Senior Judge Humphreys
Argued at Fredericksburg, Virginia


C.K.

                                             MEMORANDUM OPINION* BY
v.        Record No. 0332-23-4                  JUDGE FRANK K. FRIEDMAN
                                             NOVEMBER 26, 2024
INOVA HEALTH CARE SERVICES, d/b/a
 INOVA FAIRFAX HOSPITAL


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

(Carla D. Brown; Peter C. Cohen; Charlson Bredehoft Cohen
Brown & Nadelhaft, P.C., on briefs), for appellant.  Appellant
submitting on briefs.

Laurie L. Kirkland (Ian J. McElhaney; Blankingship & Keith, P.C.,
on brief), for appellee.

Amicus Curiae: Virginia Employment Lawyers Association (Tim
Schulte; Brittany Haddox; Shelley Cupp Schulte, P.C.; Strelka
Employment Law, on brief), for appellant.


C.K.[1] appeals the circuit court's ruling sustaining Inova Health Care Services' (Inova)

plea in bar and dismissing C.K.'s complaint.  C.K. filed the complaint alleging her employer,

Inova, was negligent and thus liable for injuries she sustained when a mentally unstable

adolescent patient sexually assaulted C.K. during her shift as a unit supervisor on the adolescent

psychiatric unit.[2]  On appeal, C.K. argues that the circuit court erred by dismissing her complaint

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Initials are used to protect the identity of the victim.  The patient, a minor, is referred to as John Doe to also protect his identity.

[2] The record in this case is partially sealed.  "To the extent that [an] opinion [of this Court] mentions facts found in the sealed record, [it] unseal[s] only those specific facts, finding

because the sexual assault was not an "actual risk" that arose out of her employment. We hold that the court did not err by sustaining the plea in bar. Accordingly, we affirm the ruling dismissing C.K.'s complaint.

## BACKGROUND

Inova's employment of C.K.

Inova's inpatient adolescent psychiatric unit treats adolescents between the ages of 14 and 17 with "acute mental care illnesses." The admitting psychiatrists have the authority to admit patients to the unit. Patients in the unit have a variety of mental illness diagnoses, including bipolar disorder, schizophrenia, psychosis, and other disruptive behaviors requiring inpatient care. The patients may pose a danger to themselves or others, may become violent, and could exhibit sexual behavior in connection with their diagnosis.

Inova required nurses working on the adolescent psychiatric unit to undergo "crisis prevention training," otherwise commonly known as "CPI training." CPI training teaches individuals how to protect themselves when working with acute psychiatric inpatients due to the nature of the illnesses. The training includes instructions on how to get out of a physical hold if grabbed by a patient.

Inova employed C.K. in June 2020 as a nursing unit supervisor for the inpatient adolescent psychiatric unit. In that capacity, C.K. supervised and administered nursing care to the patients on the unit. C.K. received and passed CPI training. During discovery, C.K. acknowledged that the psychiatric unit differed from other units in the hospital because the "unit has the potential to be more dangerous than a unit housing sick or surgical patients because the patients in the adolescent unit are mentally unstable and impulsive . . . ."

---

them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

The assault of C.K. and Doe's sexually deviant background

John Doe assaulted C.K. while she was working at Inova on June 17, 2020. During the attack, Doe said "[g]et over here, girl," placed C.K. in a headlock, and then "grabbed," "stroked," and "squeezed" C.K.'s vagina. When C.K. extricated herself from the headlock, the patient grabbed her breast and pulled her shirt. Prior to the assault, C.K. had not had any one-on-one interactions with Doe. Doe had serious mental, emotional, and behavioral problems, including "hypersexuality," sexual "preoccupation," and an inability to "control his sexual impulses."

Prior to his admission to the psychiatric unit at Inova, Doe had previously been hospitalized twice for his deviant behavior. The first time, in 2018, Doe was hospitalized after "grabbing a woman's backside." The second time, in 2020, Doe was hospitalized after he left home with a knife in search of a woman to have sex with.[3] During an evaluation, Doe once told a therapist that "he would give her more information if she would have intercourse with him[.]"

After the incident with C.K., Doe confessed that during a previous hospitalization he held a plastic fork to a staff member's neck, demanding that he and the staff member "get a room." Although Doe has been criminally charged for such behavior, he has never been tried nor convicted. Doe confirmed that he had actually planned the attack against another nurse and that he "knew [he] was going to do it[.]" Doe reported "that instead of the nurse that he wanted to have sex with, he got a hold of [C.K.] and put her in a hold [sic] and started touching her over her clothes." Inova documented in their investigation that Doe was "energ[ized]" by the thought of sexually assaulting a woman and that he ruminated "about his plan of grabbing a nurse and . . . having intercourse with her." Furthermore, Doe admitted that the assault was not impulsive and that he had planned it out 24 hours ahead of time.

---

[3] The patient returned home quickly, having not taken any action.

- 3 -

Inova's policies regarding sex offenders

Inova's admissions policies specifically exclude adolescents who are "identified as . . . sex offender[s]" and those involved in criminal proceedings.[4]  Inova knew of Doe's sexually deviant history.  Inova staff testified during the trial court proceedings that Doe should not have been admitted due to his "hypersexual activity"; "hypersexual background" and "history"; and his "history of sexual misconduct."  However, Dr. Afia Hussain, the medical director for the unit at the time of Doe's admission, testified that Doe had not been "identified as a sexual offender" when Hussain admitted him.  Hussain stated that information at the time of admission revealed Doe had a psychiatric, suicidal, and hospitalization history.  Hussain also noted that he was aware Doe had a history of grabbing a woman in 2018, that Doe was hospitalized and treated for that incident, and that Doe was also treated for an incident where he left the house in search of a woman and was unsuccessful.

Doe's sexual assault was the first and only sexual assault to have ever occurred on the unit since its opening in 2018.  This is true even though sometimes adolescent patients on the unit would exhibit sexual preoccupation that could be exacerbated by mental illness.

Plea in bar hearing

Following the attack, C.K. "met with Inova security to press charges against the patient" and filed a workers' compensation claim; C.K. eventually received $7,842.02 in compensation

---

[4] Inova claims in their statement of facts that Doe "had not been identified as a sexual offender at the time he presented . . . to the [u]nit."  There was some disagreement in the proceedings below about whether the admissions policy required that sexual offenders be registered sexual offenders or "sexual offenders" in the broad sense of the term.  The circuit court found that the policy did not refer to all sexual violators in the broad sense of the word.  The policy itself does not clarify "registered" sex offenders, it simply references an "[i]ndividual identified as a sex offender."

- 4 -

payments.[5]  C.K. then sued Inova for negligence or gross negligence in the Circuit Court of Fairfax County.  Inova demurred and filed a plea in bar.

In its plea in bar, Inova argued that the sexual assault was an "actual risk" of C.K.'s employment and that C.K.'s exclusive remedy for her injuries was under the Virginia Workers' Compensation Act.  C.K. argued that the sexual assault was not an actual risk of her employment and, even if it was, the assault was personal and not directed at C.K. as an employee or because of her employment.   The circuit court rejected C.K.'s argument and overruled the demurrer but sustained the plea in bar, dismissing C.K.'s claims with prejudice.  The circuit court found that the assault against C.K. was not personal to her and instead found that the assault was augmented because of the particular character of her job.  The court found that C.K. "fac[ed] an elevated risk . . . just by the nature of the people that are admitted" to the unit.  C.K. appealed.

## ANALYSIS[6]

The main issue is whether sexual assault was an "actual risk" of C.K.'s employment with Inova and whether the injuries C.K. incurred arose from her employment with Inova.  In her assignments of error, C.K. first argues that the circuit court inappropriately applied the "actual risk" test to the facts in this case.  C.K. next asserts that, even if her employment "enhanced [the] risk of assault," the circuit court improperly found her sexual assault arose out of her employment.  C.K.'s third and final argument is that the circuit court's finding that the assault

---

[5] This payment data was read into the record by counsel as a party admission from the transcript of C.K.'s deposition in this case.

[6] "A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010).  "The party asserting the plea in bar bears the burden of proof." *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)).  "[W]e will review the circuit court's legal conclusions de novo." *Id.*  Furthermore, where the "parties present evidence on the plea ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Id.* (quoting *Massenburg*, 298 Va. at 216).

resulted from an increased risk of sexual assault created by her employment was plainly wrong and without evidentiary support.

I. <u>The circuit court correctly applied the actual risk test to determine that Doe's assault of C.K. arose out of her employment.</u>

On appeal, C.K. contends that the circuit court incorrectly applied the actual risk test from *Lopez v. Intercept Youth Services, Inc.*, 300 Va. 190 (2021), and instead should have applied an "assailant motive" test from *King v. DTH Contract Services*, 69 Va. App. 703 (2019). C.K. contends that the motivation for the attack was personal; thus, she may pursue her tort claim against her employer. *See King*, 69 Va. App. at 707 ("[A] claimant may prove an assault arose out of his employment if he can prove the job subjected him to greater risk of assault— even if he knew his assailant—as long as no evidence suggests the motivation for the assault was personal."). Inova maintains on appeal that the circuit court applied the correct legal framework from *Lopez*. Inova further argues that C.K.'s exclusive remedy was under the Virginia Workers' Compensation Act. *See Northrop Grumman Shipbuilding, Inc. v. Wardell Orthopaedics, P.C.*, 67 Va. App. 420, 427 ("Code § 65.2-700 vests the Commission with jurisdiction to determine all questions 'arising under' the Virginia Workers' Compensation Act." (quoting *Bogle Dev. Co. v. Buie*, 250 Va. 431, 434 (1995))); *Lopez*, 300 Va. at 197 ("[A]n injury covered by the Act 'means only injury by accident arising out of and in the course of the employment.'" (quoting Code § 65.2-101)).[7] Inova contends that the circuit court applied the right test in determining that the assault arose out of C.K.'s employment.

_____

[7] Courts in Virginia have permitted employees to obtain compensatory damages through civil suits, finding that workers' compensation is not a bar. For example, in *Fox v. GMC*, 247 F.3d 169 (4th Cir. 2001), the Fourth Circuit permitted compensatory damages for pain and suffering caused by harassment, in addition to the lost wages received through the workers' compensation claim. *Id.* at 180 n.4; *see also Riffey v. K-VA-T Food Stores, Inc.*, 284 F. Supp. 2d 396, 398 (W.D. Va. 2003) ("It should be noted that admitting evidence of the employer's workers' compensation payments to Riffey will not frustrate the remedial policies of the ADA because the employer still may be liable for other compensatory damages, such as pain and

Under the Workers' Compensation Act, an employee is entitled to receive benefits from her employer when she suffers an injury by accident arising out of and in the course of her employment. In general, such benefits are an injured employee's exclusive remedy for a workplace injury falling within the Act. Code § 65.2-307; *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, 301 Va. 460, 469 (2022); *see also Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 783 (4th Cir. 2023) (finding that the Act "created an administrative forum for [injured] workers' compensation claims").

"Whether an employee's work-related injury arises out of his employment 'involves a mixed question of law and fact, which [this Court] review[s] *de novo* on appeal.'" *King*, 69 Va. App. at 711 (alteration in original) (quoting *Turf Care, Inc. v. Henson*, 51 Va. App. 318, 324 (2008)). "[T]he Workers' Compensation Act is 'remedial legislation' that is 'liberally construed in favor of the injured employee.'" *Id.* (quoting *E.I. du Pont de Nemours & Co. v. Eggleston*, 264 Va. 13, 17 (2002)). "The statutory language, 'arising out of and in the course of the employment[,]' should be liberally construed to carry out the humane and beneficial purposes of the Act. The duty to liberally construe the Act does not, however, authorize the amendment, alteration or extension of its provisions." *Baggett Transp. Co. v. Dillon*, 219 Va. 633, 637 (1978).

"The expressions 'arising out of' and 'in the course of' are not synonymous and are used conjunctively; both conditions must be present before compensation will be awarded and the burden is on the claimant to prove them by a preponderance of the evidence." *Id.*[8] "The phrase

___

suffering, not covered under workers' compensation."). While this may be true, the circuit court was correct here in noting that C.K. could—and did—find a remedy under the Workers' Compensation Act.

[8] The parties do not dispute that C.K. was assaulted *in the course of* her employment at Inova—only whether her injuries *arose from* her employment is in dispute.

arising 'out of' refers to the origin or cause of the [plaintiff's] injury." *Cnty. of Chesterfield v. Johnson*, 237 Va. 180, 183 (1989). Virginia applies the "actual risk" test to determine whether an accident arises out of employment. *Smithfield Packing Co. v. Carlton*, 29 Va. App. 176, 181 (1999). The actual risk test "requires that the employment subject the employee to the particular danger that brought about his or her injury." *Id.* (quoting *Lipsey v. Case*, 248 Va. 59, 61 (1994)).[9]

As noted by this Court, "there must be a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed to conclude that the injury arises out of the employment." *Carr v. City of Norfolk*, 15 Va. App. 266, 269 (1992); *see also Smithfield Packing Co.*, 29 Va. App. at 181 ("Consequently, an accident arises out of the employment when it is apparent to a rational mind, under all attending circumstances, that a causal connection exists between the conditions under which the work is required to be performed and the resulting injury." (quoting *Lipsey*, 248 Va. at 61)).

The Supreme Court explained in *Lopez* that the requirement that an assault "arise out of" the employment is one of causation, "focus[ing] on the 'origin or cause of the injury.'" *Lopez*, 300 Va. at 197 (quoting *R & T Invs., Ltd. v. Johns*, 228 Va. 249, 252 (1984)). The Court in *Lopez* clarified that to determine whether a causal connection exists, an "actual risk" test, rather

---

[9] In cases of workplace sexual assault, the Workers' Compensation Act provides an exception to the jurisdictional limitation vesting all questions "arising under" the Act in the Commission: "[A]n employee who is sexually assaulted and can identify the attacker may elect to pursue an action-at-law against the attacker . . . for full damages resulting from such assault in lieu of pursuing benefits under this title." Code § 65.2-301(B). The victim may take advantage of this exception "upon repayment of any benefits received under this title." *Id.* C.K. received such payments totaling $7,842.02. The record does not disclose whether she ever repaid these funds as required by Code § 65.2-301(B). The Supreme Court held that Code § 65.2-301 "applies only when it appears that 'the nature of such employment substantially increases the risk of [sexual] assault.'" *Reamer v. Nat'l Serv. Indus.*, 237 Va. 466, 472 (1989) (alteration in original) (quoting an earlier codification of the statute). But the Supreme Court found it unnecessary to "suggest examples of such employment" in *Reamer*. *Id.*

than a "positional risk" test, must be used. *Id.* This means "[t]he causative danger must be peculiar to the work and not common to the neighborhood." *Id.* (alteration in original) (emphasis omitted).

In assessing causation in cases involving assaults "the clearest ground of compensability [through workers' compensation] . . . is a showing that the probability of assault was augmented either because of the particular character of claimant's job or because of the special liability to assault associated with the environment in which he or she must work." *Id.* (second alteration in original). The Court observed that "[a] co-worker's mere 'personal attraction'" to an employee or the assaults arising out of "'personal' disputes wholly unrelated to employment" could not "fairly be traced to [the victim's] employment as a contributing proximate cause." *Id.* at 198 (second alteration in original). As a result of its analysis, the Supreme Court concluded that the trial court in *Lopez* correctly sustained the plea in bar to the tort claims brought by the employee's estate. *Id.* at 200.

In this case, the circuit court correctly applied the "actual risk" test from *Lopez. Id.* at 197. *Lopez* explicitly addressed personal attacks versus those arising out of employment, stating that, when applying the proper actual risk test in other cases, "the facts did not show 'that the probability of assault was augmented either because of the particular character' of the job or the work conditions." *Id.* at 198 (quoting 1 Arthur Larson et al., *Larson's Workers' Compensation Law* § 8.01[1][a], at 8-3 (2021)). For example, "assaults that are 'purely personal in nature, both in motivation and in consummation' do not present a peculiar risk arising out of the employment, because they are 'not directed against the employee as part of the employment relationship.'" *Id.* (first quoting *Reamer v. Nat'l Serv. Indus.*, 237 Va. 466, 471 (1989); and then quoting *City of*

- 9 -

*Richmond v. Braxton*, 230 Va. 161, 165 (1985)).[10] Here, the trial court took evidence at the plea in bar hearing and concluded this attack was not personal. Ample evidence supports this conclusion. We reject C.K.'s claim that the circuit court erred in applying the actual risk test.

    II. <u>The circuit court did not err when it found that the assault of C.K. was an "actual risk" of her employment, and the evidence in the record supports that finding.</u>

Using the actual risk test, the circuit court found that the probability of assault by an adolescent psychiatric patient was augmented because of the character of C.K.'s employment and the environment in which she worked. Indeed, the circuit court noted that C.K. faced an "elevated risk" of assault "just by the nature of the people that are admitted on the . . . ward and which [C.K.] knew about."

At the hearing on the plea in bar, Inova presented evidence that an assault, whether sexual or otherwise, by a patient was an actual risk of C.K.'s employment as a nurse supervisor on the psychiatric unit. Inova's adolescent psychiatric unit treats adolescents with "acute mental care illnesses," who have a variety of mental illness diagnoses, including bipolar disorder, schizophrenia, psychosis, and other disruptive behaviors requiring inpatient care. The admitted patients may pose a danger to themselves or others, may become violent, and could exhibit sexual behavior in connection with their diagnosis.

While Doe's sexual assault was the first and only sexual assault to have ever occurred on the unit since its opening in 2018, adolescent patients on the unit would exhibit sexual preoccupation that could be exacerbated by their mental illness. The evidence in the record established that due to this elevated risk, Inova required nurses working on the psychiatric unit to undergo CPI training, which included instructions on how to get out of a physical hold if grabbed

---

[10] The assailant in *Reamer* was a customer who was personally acquainted with the victim, and the assault was not augmented in any way by the fact that the victim worked in a furniture store. 237 Va. at 471. The Court noted "that nothing in the nature of employment in a furniture-rental store increases the risk of rape and forcible sodomy." *Id.* at 472.

by a patient. In her capacity as a nursing unit supervisor on the unit, C.K. supervised and administered nursing care to the patients on the unit and passed CPI training. C.K. herself even acknowledged that the psychiatric unit differed from other units in the hospital because the "unit has the potential to be more dangerous than a unit housing sick or surgical patients because the patients in the adolescent unit are mentally unstable and impulsive . . . ."

The circuit court found a nexus between the assault and C.K.'s employment, and the circuit court did not err in finding that the assault was not "purely personal." Based on the evidence in the record, the circuit court's finding that the sexual assault arose out of C.K.'s employment as an actual risk of her position is not plainly wrong.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*